Anne BALLANTYNE, Mary McComb,
Jon Sandige, Richard Schimpff, and
Susie Willerson, Petitioners,

v.

CHAMPION BUILDERS, INC. and
Primero Projects, L.L.C.,
Respondents.

No. 02–0260.

Supreme Court of Texas.

Argued Jan. 22, 2003.

Decided July 9, 2004.

Rehearing Denied Oct. 15, 2004.

Scott Houston, Austin, for Amicus Curiae Texas Municipal League.

Hector X. Saenz, Charles S. Frigerio, Law Office of Charles S. Frigerio, San Antonio, for petitioner.

Curtis L. Cukjati, Martin & Cukjati, Elizabeth Conry Davidson, Royal B. Lea III, Bingham & Lea, San Antonio, James M. Hill, Boerne, for respondent.

Justice WAINWRIGHT delivered the opinion of the Court, in which Justice HECHT, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice SCHNEIDER, Justice SMITH, and Justice BRISTER joined.

In this case, we decide whether the individual members of a city's board of adjustment are afforded official immunity for state law claims arising from their actions as members of the board.

Champion Builders, Inc. sued the individual members of the City of Terrell Hills

Board of Adjustment (BOA) for negligence, gross negligence, and intentional interference with contract arising from the BOA's revocation of Champion's permit to construct an apartment building. The jury returned a verdict in favor of Champion and rejected the members' assertion of official immunity. The trial court granted the BOA members' motion for judgment non obstante veredicto on official immunity. A divided court of appeals, sitting en banc, relying on subjective evidence of the asserted motivation of the members, reversed the judgment and held that more than a scintilla of evidence supported the jury's failure to find that the good faith prong of the affirmative defense of official immunity had been proven. *Champion Builders v. City of Terrell Hills*, 70 S.W.3d 221, 231 (Tex.App.-San Antonio (2001))3. We disagree. The BOA members established official immunity at trial as a matter of law. We further reaffirm that consideration of subjective evidence of the good faith element of official immunity is inappropriate. Therefore, we reverse the court of appeals' judgment in part and render judgment that Champion take nothing.

## I. Background

Champion Builders, along with Roldan Trevino and Armando Tamez Jr., initially planned to construct an eight-unit apartment building on Eventide Drive in the City of Terrell Hills in Bexar County, Texas. Champion, Trevino, and Tamez formed Primero Projects, L.L.C. to develop the property. Pursuant to settlement, Champion and Primero have the only interests at stake in this lawsuit.[1] References to Champion in this opinion also include Primero's interests.

When Champion applied for a building permit in January 1994, the City denied it, citing excessive population density on the lot. Champion scaled down the project and planned a six-unit complex.

In May 1994 the city manager issued a building permit to Champion for the construction of the six-unit complex. A group of Terrell Hills residents appealed the issuance of the permit to the BOA. The residents asserted that City Ordinance 634, which required every lot to have 80 feet of frontage along the adjacent road, precluded construction of the apartment complex on the portion of the Eventide lot that Champion purchased. Terrell Hills, Tex., Ordinance 634, § VII(B) (July 22, 1982). The Eventide lot was divided into two different zones for development. Although the total lot had over 120 feet of frontage, the apartment complex could be built only on the 66.83 feet of frontage that was zoned semi-commercial. The Terrell Hills residents hired an attorney and contested the issuance of the permit. The residents argued that only the 66.83 feet of frontage zoned semi-commercial on the Eventide lot could be counted toward the 80–foot frontage requirement of Ordinance 634. They concluded that the building permit should be revoked because the planned development did not comply with Ordinance 634.

The city manager requested an opinion on this issue from Charles Biery, an attorney in private practice hired to serve as Terrell Hills city attorney. In his June 6, 1994 letter, Biery opined that the proposed apartment complex met the requirements of the Ordinance because the lot had a total frontage along the road of 123.33 feet.

1. Primero's three members each had a one-third interest in the Eventide property. However, after the dispute with the BOA arose, the members settled their interests in Primero with James Spears (owner of Champion) becoming sole owner of Primero in return for Champion's release of its one-third interest in the Eventide property to Trevino and Tamez.

In Biery's opinion, the total dimensions of the entire lot determined the frontage measurement for purposes of Ordinance 634, rather than the footage for the commercially-zoned section of the lot. Thus, Biery concluded that the city manager properly issued the permit. The residents believed that, as applied to Champion's application for a permit, the lot was required to have 80 feet of commercially zoned frontage on Eventide as a condition of Champion's planned commercial use.

On June 7, 1994 the BOA convened a public hearing to consider the appeal of the building permit issuance. At the meeting, the BOA heard from the public, including Terrell Hills residents and James Spears, the owner of Champion. Biery also attended the meeting, and the BOA members had been provided with a copy of his June 6 letter to the city manager. After listening to the public comments, the BOA members discussed the permit in an executive session with Biery. According to the transcript of the executive session, Biery reiterated his opinion, set forth in his June 6 letter, that the lot satisfied the frontage requirement and the City properly issued the permit. The transcript also shows that the BOA members considered the comments of the residents, who opined through their attorney that the frontage of Champion's lot did not meet the requirements of Ordinance 634. Biery explained to the BOA members that they were presented with different opinions from two attorneys, and that the BOA members could "do whatever [they] want[ed] to." He indicated that they would likely be sued by one of the parties regardless of which decision they made. The transcript also includes a discussion of subjective and derogatory views of some members of the BOA concerning the type of residents who might be attracted to an apartment development. Some of the BOA members indicated that persons who would move into the apartments may be loud, disruptive in the community, and more likely to be involved in illegal activities. When they resumed the public meeting, the BOA members voted to revoke the permit.

Champion appealed the BOA's decision to revoke the permit to district court. In August 1994, the trial court rendered summary judgment in favor of Champion and ordered reinstatement of the permit. The court of appeals affirmed the judgment, and this Court denied review. *Dubose v. Champion Builders, Inc.*, No. 04-94-00825-CV, 1995 WL 694975 (Tex.App.-San Antonio Nov.22, 1995, writ denied) (not designated for publication).

After its successful appeal, Champion, however, did not seek to have the permit renewed. Spears testified at trial that the litigation and appeal of the issuance of the building permit hindered financing efforts for the apartment complex and was a concern to Champion's partners in the planned development of the Eventide property. Champion ultimately decided to abandon the project.

In June 1996, Champion sued the City, the BOA, and the individual BOA members for revocation of the building permit and the City for changes in the 1995 ordinances that increased the minimum square footage requirement for single family apartments beyond the square footage of Champion's project. Champion alleged that the individual BOA members were negligent and grossly negligent for holding an illegal meeting, revoking a permit to which Champion was entitled, and failing to follow the advice of the city attorney. Champion further asserted that by revoking the building permit the individual BOA members were liable for tortious interference with Champion's contracts with Primero and third parties to build the

apartment. Champion also asserted takings claims against the City and the BOA. The BOA members contended that they were shielded from liability by official immunity. The court submitted questions to the jury on negligence, gross negligence, tortious interference, and the amount of damages to be awarded Champion, if any. In separate questions, the charge also asked if the City or the BOA, as an entity, committed a taking and whether the individual BOA members were entitled to official immunity.

The official immunity question listed the three elements of official immunity and defined pertinent legal terms.

Were the persons named below acting within their official immunity or privilege as Board Members for the City of Terrell Hills' Board of Adjustment during the occurrence in question?

"Official immunity or privilege" means that:

a. the person acted in a discretionary function;

b. the person acted in good faith; and

c. the person acted within the scope of his or her authority.

"Discretionary function" means an act that requires personal deliberation, decision, and judgment. An act by a government official in the course of performing a discretionary function does not lose its discretionary status because it was wrongful. Actions which require obedience to orders or the performance of a duty to which the person has no choice are ministerial.

"Good faith" means an official or employee acts in good faith if a reasonably prudent official or employee, under the same or similar circumstances, could have believed that his or her acts were justified.

"Scope of authority" means a public official or employee is acting within the scope of his or her authority if he or she is discharging the duties generally assigned to him or her even if they are performed wrongly or negligently. Public officials and employees are not liable for acts performed in good faith within the scope of authority, even when the officials violate or misinterpret the law.

The charge instructed the jury to answer "yes" or "no" for each of the five board members.

The jury returned a verdict in favor of Champion on all claims and rejected the BOA members' immunity defense. The jury found over $700,000 in actual and punitive damages against the defendants, over $600,000 of which was against the individual BOA members.

The City, the BOA, and the BOA members filed motions for judgment n.o.v. The City and the BOA argued that there was insufficient evidence to sustain the jury's verdict that there was a compensable taking. The trial court agreed and granted the City's and the BOA's motions for judgment n.o.v. The BOA members argued that they established their affirmative defense of official immunity as a matter of law. In response, Champion argued that official immunity does not protect members of a board of adjustment, and, even if it does, the BOA members did not meet their burden of proof at trial to establish all the elements of the defense. The trial court granted the BOA members' motion for judgment n.o.v. on official immunity. Accordingly, the trial court entered a take-nothing judgment against Champion.

The court of appeals affirmed the trial court's judgment. 70 S.W.3d at 224. Champion moved for rehearing en banc, which the court of appeals granted. *Id.* On rehearing en banc, a divided court affirmed the trial court's judgment for the

City and the BOA as to the takings claim, but reversed the judgment n.o.v. on official immunity of the BOA members and remanded the case for entry of judgment in accordance with the jury's verdict. *Id.* The court of appeals held that the BOA members did not conclusively establish that they were entitled to official immunity. *Id.* at 231. The court of appeals stated that "[c]ourts employ an objective standard in analyzing official immunity," but it determined, nevertheless, that the jury properly considered subjective evidence of the BOA members' intent because the official immunity defense "cannot be stretched ... to provide immunity to an official whose subjective bad faith is demonstrated in the record." *Id.* at 229. A split court of appeals denied further reconsideration en banc.[2] The dissenting justices contended that the majority erred by considering subjective evidence of the good faith element of official immunity. *Id.* at 233.

The BOA members petitioned this Court for review asserting that they established official immunity as a matter of law and that the court of appeals erred in considering subjective evidence in evaluating the good faith prong of the immunity defense. The BOA members also assert that they established official immunity as a matter of law. In addition, the BOA members contend that their assertion of official immunity amounted to an assertion of legislative immunity. Champion did not appeal the court of appeals' judgment against it on the takings claims. Because the issue of official immunity is dispositive, we turn to that issue.

## II. Applicability of Official Immunity

Champion asserts that official immunity does not protect members of a board of adjustment. Applying official immunity to the BOA members, it claims, would be "forcing the square peg of building permit revocation ... into the round hole of police officer high-speed chase immunity precedent."

Although we have approved the application of official immunity in other contexts, we have not previously addressed whether official immunity extends to the members of a city's board of adjustment. Official immunity protects public officials from suit arising from performance of their (1) discretionary duties (2) in good faith (3) within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994) (citing *Wyse v. Dep't of Pub. Safety,* 733 S.W.2d 224, 227 (Tex. App.-Waco 1986, writ ref'd n.r.e.); *Baker v. Story,* 621 S.W.2d 639, 644 (Tex.Civ. App.-San Antonio 1981, writ ref'd n.r.e.)).

We begin our analysis by reviewing Texas case law on official immunity and its applicability to public officials who perform functions similar to the BOA members to determine whether the "peg" in this case is actually "square." We do not address whether legislative or judicial immunity was preserved for review or whether either immunity applies to members of a city's board of adjustment.

### A. Official Immunity in Texas

Fifty years ago, we recognized a "good faith" immunity for certain public officials. *Campbell v. Jones,* 153 Tex. 101, 264 S.W.2d 425 (1954). We held that trustees of a school board were not personally liable for damages for an alleged breach of a teacher's contract. *Id.* at 427. The trustees were charged with the discretionary duty of renewing or terminating employ-

---

**2.** The court of appeals voted 3–3 to deny the motion for reconsideration of the en banc opinion. The seventh justice was new to the court and did not participate in the motion for reconsideration.

ment contracts and "in good faith were trying to comply with what reasonably appeared to be the then rulings of the State Superintendent." *Id.* We refused to assent to a doctrine that would make public officials with discretionary duties personally liable for mistaken judgment. *Id.*

Other courts referred to this defense as immunity protecting "quasi-judicial" officials. *Austin v. Hale,* 711 S.W.2d 64, 68 (Tex.App.-Waco 1986, no writ); *Augustine v. Nusom,* 671 S.W.2d 112, 115 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Baker,* 621 S.W.2d at 644. In *Baker,* the court of appeals held that where a public official has quasi-judicial or discretionary duties, "he enjoys immunity as long as he acts in good faith within the scope of his authority." 621 S.W.2d at 644. The summary judgment evidence, however, did not conclusively establish that Dr. Jim Story, the head of the university neurological surgery department and a state employee, was entitled to official immunity. *Id.* at 645–46. Another appellate court acknowledged that an employee of a state department, who collected facts and then made quasi-judicial or discretionary determinations to take action against child day care facilities, "enjoys immunity as long as he acts in good faith within the scope of his authority." *Augustine,* 671 S.W.2d at 115 (quoting *Baker,* 621 S.W.2d at 644); *see also Hale,* 711 S.W.2d at 68 (concluding that investigators with the Texas Department of Human Resources "cannot be held liable for any negligent acts which they may have committed while acting within their quasi-judicial authority").

In several more recent cases, we recognized official immunity as an affirmative defense for law enforcement and emergency response personnel. *Telthorster v. Tennell,* 92 S.W.3d 457, 459–60 (Tex.2002) (police officer engaged in an arrest); *Wadewitz v. Montgomery,* 951 S.W.2d 464,

467 (Tex.1997) (police response to burglary); *Chambers,* 883 S.W.2d at 653 (high-speed police vehicle pursuit). We also have held that official immunity protects government-employed medical personnel against claims that arise out of their exercise of governmental, as opposed to medical, discretion. *Kassen v. Hatley,* 887 S.W.2d 4, 11 (Tex.1994).

After we articulated the official immunity standard in these contexts, courts of appeals continued to apply the doctrine to other public officials. For example, in *Perry v. Greanias,* the court of appeals relied on *Chambers* to recognize that a city controller, charged with conducting audits and assessing compliance in city contracts, was entitled to official immunity from liability. 95 S.W.3d 683, 697–98 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). Determining that the official's evidence proved conclusively that he acted in a discretionary capacity and in good faith within the scope of his authority, the court affirmed the trial court's summary judgment based on official immunity. *Id.* at 699, 702. In *Medina County Commissioners' Court v. Integrity Group, Inc.,* the court of appeals held that individual county commissioners were entitled to official immunity from suit arising from their votes to deny approval of a property subdivision plan. 944 S.W.2d 6, 10 (Tex.App.-San Antonio, 1996, no writ); *see also Williams v. Houston Firemen's Relief and Ret. Fund,* 121 S.W.3d 415, 436 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (trustees of firemen's relief and retirement fund entitled to official immunity from personal liability in interpreting retirement statute, promulgating guidelines, administering the fund, and denying claims for benefits).

In summary, Texas courts have long recognized official immunity, in substance if not by name, for a variety of public officials.

## B. Rationale of Immunity for Public Officials

■ Common law official immunity is based on the necessity of public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation. *See Kassen*, 887 S.W.2d at 8; *Baker*, 621 S.W.2d at 643–44. "The public would suffer if government officials, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions." *Kassen*, 887 S.W.2d at 8. Denying the affirmative defense of official immunity to public officials in such circumstances "would contribute not to principled and fearless decision-making but to intimidation." *Wood v. Strickland*, 420 U.S. 308, 319, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (quoting *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Certainly, public officials may err in the performance of their duties. *Id.* at 321, 95 S.Ct. 992. The existence of immunity acknowledges this fact, but recognizes that the risk of some error is preferable to intimidation from action at all. *Id.* In addition, some of the most capable candidates would be deterred from entering public service if heavy burdens on their private resources from monetary liability were a likely prospect for errors in judgment. *See id.* at 320, 95 S.Ct. 992.

■ We conclude that official immunity is a bar to state law claims against individual members of a board of adjustment. We note that public officials are also accountable through elections, state criminal and civil statutes, federal causes of action, and other mechanisms in place to police the conduct of public officials.

## III. Analysis

The jury found against the BOA members on their affirmative defense of official immunity. The trial court granted a judgment n.o.v., finding the defense was established as a matter of law. The court of appeals reversed the judgment n.o.v. and remanded the case for entry of judgment on the jury verdict. As the BOA members had the burden of proof on their affirmative defense, they can meet that standard after an adverse verdict only by establishing that official immunity had been proven as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam); *see Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex.1997).

■ We consider whether the BOA members established each of the elements of official immunity as a matter of law, i.e., whether the BOA members were (1) acting within the scope of their authority (2) in performing their discretionary duties in (3) good faith. *Chambers*, 883 S.W.2d at 653; *Wyse*, 733 S.W.2d at 227; *Baker*, 621 S.W.2d at 644.

## A. Scope of Authority

■ As we explained in *Chambers*, public officials act within the scope of their authority if they are discharging the duties generally assigned to them. 883 S.W.2d at 658. The Local Government Code authorizes a municipality to create a board of adjustment. Tex. Loc. Gov't Code § 211.008(a). A board of adjustment's statutory authority includes the power to hear and decide appeals of the city manager's zoning decisions, to hear and decide special exceptions to a zoning ordinance, and to authorize certain zoning variances. *Id.* §§ 211.009(a)(1)-(3). In exercising its authority to hear and decide zoning appeals, the board of adjustment has the power to "reverse or affirm, in whole or in part, or modify" the city manager's zoning decisions and make the correct determina-

tion. *Id.* § 211.009(b). The Terrell Hills BOA was formed pursuant to this statute, and Terrell Hills City Ordinance 634, sections XI(A)(9)-(14) codifies the powers granted the BOA by the Legislature.

Champion argues that the BOA members were not acting within the scope of their authority because no evidence was presented that the BOA had ever revoked a permit before this instance. Therefore, Champion concludes that in the absence of a prior instance of revocation of a building permit by the BOA, the authority to revoke permits must be specifically vested in the city manager and not the BOA. We are not persuaded, however, by Champion's arguments. Where a statute or ordinance confers authority on an entity to act, because such authority has not been exercised previously does not mean that the authority does not exist.

After the BOA members voted to revoke the building permit, a trial court in a prior proceeding reversed the BOA's decision, and a court of appeals affirmed based on its interpretation of Ordinance 634. *Du-Bose*, 1995 WL 694975, at *2. Champion contends that the subsequent judicial determination that the BOA erred also is evidence that the BOA members were acting outside the scope of their authority at the time they voted to revoke the permit. On the contrary, the BOA members were expressly authorized by law to consider and affirm, reverse, or modify the city manager's zoning decision. Tex. Loc. Gov't Code § 211.009(b). The fact that the BOA's action was later determined to be incorrect is not necessarily probative of whether their prior actions were in discharge of the duties generally assigned to them. *See Chambers*, 883 S.W.2d at 658.

■ We agree with the court of appeals that the BOA members were acting within the scope of their authority. 72 S.W.3d at 228–29. The Ordinance and statutes plain-ly authorize the BOA to revoke a building permit, and Champion presents no compelling arguments to rebut this conclusion. The relevant sections of the Texas Local Government Code and the Ordinance, which are the source of the BOA's legal authority, conclusively establish that hearing and deciding appeals of the issuance of building permits based on zoning regulations is within the authority of the BOA and its members.

## B. Discretionary Function

■ We next determine whether the BOA members performed a discretionary function or merely fulfilled a ministerial act when they voted to revoke the building permit that the Terrell Hills city manager issued to Champion. Ministerial acts are those for which "the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Comm'r of the Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849). If the public official must obey an order, without having any choice in complying, the act is ministerial. *Chambers*, 883 S.W.2d at 654 (citing *Wyse*, 733 S.W.2d at 227). If an action involves personal deliberation, decision, and judgment, however, it is discretionary. *Id.*

Champion argues that the BOA members were not exercising discretion in voting to revoke the building permit because the members had only one option—to affirm the issuance of the building permit. To support these contentions at trial, Champion argued that by satisfying all of the requirements of Ordinance 634, issuance of the permit was mandatory and ministerial.

Given the appellate powers the Legislature granted to boards of adjustment, it is difficult to follow Champion's argument

that the BOA's hearing and deciding appeals is only a ministerial act. Appellate review of an action, especially the power of a de novo review, almost inevitably involves deliberation, judgment, and decision. These are the very hallmarks of discretion. The BOA has the power to hear and decide appeals from any decision or determination by a city administrative official pertaining to the enforcement of the city's zoning ordinance. Terrell Hills, Tex., Ordinance 634, § XI(A)(10) (July 22, 1982). The BOA may reverse or affirm, in whole or in part, or modify any decision or determination and make such determination as ought to be made. *Id.* § XI(A)(13). The BOA members deliberated and exercised discretion in making their decision. Accordingly, we agree with the court of appeals. *See* 70 S.W.3d at 228. In interpreting the applicable ordinances and deciding as an appellate body to revoke the building permit, the BOA members performed a discretionary function, as a matter of law.

### C. Good Faith

#### 1. Justifiable Conduct of Reasonable Officials

 The parties vigorously contest whether the BOA members acted in good faith. To determine whether a public official acted in good faith, we use the objective standard adopted in *Chambers* and ask whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. 883 S.W.2d at 656; *see also Telthorster*, 92 S.W.3d at 465; *Univ. of Houston v. Clark*, 38 S.W.3d 578, 584 (Tex.2000). The standard of good faith as an element of official immunity is not a test of carelessness or negligence, or a measure of an official's motivation. *See Wadewitz*, 951 S.W.2d at

467 n. 1; *Chambers*, 883 S.W.2d at 656 n. 5. This test of good faith does not inquire into "what a reasonable person *would have done*," but into "what a reasonable [person] *could have believed.*" *Telthorster*, 92 S.W.3d at 465 (quoting *Wadewitz*, 951 S.W.2d at 467 n. 1).

Although there may be disagreement about the merits of the BOA members' decision, the decision was made in good faith if a reasonably prudent BOA member could have believed that the facts justified his action when he voted to revoke Champion's building permit. Champion asserts that the judgment n.o.v. was improper because there was more than a scintilla of evidence that the BOA members did not act in good faith. Champion contends that it presented evidence at trial that no legal controversy existed regarding the frontage requirement for the six-unit apartment project and that, as a result, the BOA members failed to establish that their votes were justified.

The BOA members had the responsibility to review the city manager's issuance of the permit and to affirm, modify, or revoke the permit. The decision before them, they contend, was not the clear-cut case that Champion describes.

 Champion misconstrues the legal standard. When a public official considers two courses of action that could reasonably be believed to be justified, and selects one, he satisfies the good faith prong of official immunity as a matter of law. The inquiry is not what was the best course of action, but whether the BOA members could have believed their actions were justified at the time they were taken. To show good faith in this context, we do not require the BOA members' application of Ordinance 634 to be legally correct, only colorable. *See Horsehead Indus., Inc. v. EPA*, 999 F.Supp. 59, 64 (D.D.C.1998) (When determining whether to award attorneys' fees to

a prevailing party who sought withheld documents under the Freedom of Information Act, the court considered, among other factors, whether the withholding agency's interpretation of the request and the act "had a colorable basis in law."); *Tex. Beef Cattle Co. v. Green,* 921 S.W.2d 203, 211 (Tex.1996) (noting that a justification defense to a tortious interference claim may be based on a "good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken").

 The key facts underlying the dispute over application of Ordinance 634 were undisputed, i.e., the number of feet of frontage the lot had along the adjacent road and the frontage requirement set forth in the Ordinance. The application of an ordinance or statute to undisputed facts falls squarely within the domain of the statutorily authorized reviewing body, notwithstanding different opinions on the interpretation of the ordinance. *See W. Tex. Water Refiners, Inc. v. S & B Beverage Co.,* 915 S.W.2d 623, 628 (Tex.App.-El Paso 1996, no writ) ("Interpretation of a zoning ordinance is a question of law singularly appropriate to the independent interpretation of [a][c]ourt."). This legal determination is not within the province of the jury. *See Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex.1998) (noting that the legality of a city ordinance is not a question for the jury to decide). The trial court properly held that good faith was satisfied as a matter of law because the BOA members' votes were justifiable.

Champion asserted that its expert on zoning ordinances established that no reasonable BOA member would have made the decision to revoke the permit. After listening to the tape and reading the transcript of the June 7 executive session, the expert testified that in his opinion the BOA members "should not have acted the way they did." The expert testimony does not change our conclusion that whether the interpretation of the Ordinance in this case was performed in good faith is a question of law.

2. Subjective Evidence

 Champion also contends that the decision to revoke the permit was motivated by the personal animus of some Terrell Hills residents and the members of the BOA to having apartments built on Eventide Drive. It claims that the subjective opinions of public officials vitiates their claim of immunity by precluding a finding of good faith.

 We have consistently held that probative evidence on the issue of good faith is limited to objective evidence. *See Wadewitz,* 951 S.W.2d at 466 ("[A] court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind."); *accord Chambers,* 883 S.W.2d at 656.

The U.S. Supreme Court has also established an objective reasonableness test for determining whether a public official acted in good faith as a condition to the protection of federal qualified immunity.[3] The Supreme Court stated bluntly: "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise im-

---

**3.** Federal courts recognize a qualified immunity for public officials, which is analogous although not identical to our official immunity. Qualified immunity protects governmental officers with discretionary authority from liability so long as their conduct does not violate clearly established statutory or consti-

tutional rights of which a reasonable person would have known. *Crawford–El v. Britton,* 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Wood,* 420 U.S. at 321–22, 95 S.Ct. 992.

properly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford–El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

█ Although the court of appeals acknowledged that this Court has established an objective standard for the good faith analysis, it nevertheless determined that subjective bad faith should be considered in evaluating good faith in this case. 70 S.W.3d at 229–30. We again reject reliance on subjective evidence in considering the good faith prong of the official immunity doctrine. It is not germane to the official immunity analysis.

There are important reasons for limiting reliance only to objective evidence in consideration of good faith. An objective standard furthers the purpose of official immunity, which is to permit decisionmaking public officials to perform their jobs without hesitation or concern that their decisions will subject them individually to civil liability under state law. *Kassen*, 887 S.W.2d at 8; *Baker*, 621 S.W.2d at 643–44. Suits against government officials exact costs against our society, including "the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814, 102 S.Ct. 2727. Employing a subjective standard of good faith significantly increases these societal costs. *Id.* at 816, 102 S.Ct. 2727. The Supreme Court explained:

> [T]he judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions. These variables ... frame a background in which there often is no clear end to the relevant evidence. Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government.

*Id.* at 816–17, 102 S.Ct. 2727. We likewise recognize a substantial public interest in shielding public officials from the costs associated with defending civil lawsuits instituted to challenge their judgment on public issues.

Through the audio recording and the transcript of the June 7 executive session, Champion attempted to show that the BOA members' actions were improperly motivated. It claims that some of their comments suggest that their feelings on the nature of apartment dwellers controlled their decision to revoke the building permit. During the executive session, the BOA members discussed whether the presence of the apartments would lower property values by bringing "scum" into the neighborhood and whether residents of apartment complexes would bring "cars on the street" and "loud boom boxes." One BOA member referred to another apartment complex in the area as a "whorehouse."

Although we do not condone the negative comments by the BOA members, the objective standard of good faith does not permit an inquiry into what subjectively could have motivated the BOA's decision. *Wadewitz*, 951 S.W.2d, at 466; *Chambers*, 883 S.W.2d at 656; *see also Crawford–El*, 523 U.S. at 588, 118 S.Ct. 1584. As conclusively established through objective evidence at trial, the 80–foot street frontage requirement in Ordinance 634 was justification for the BOA members' votes.

## IV. Conclusion

We hold that the BOA members established their affirmative defense of official immunity as a matter of law. Therefore,

the trial court properly granted the BOA members' motion for judgment n.o.v. Accordingly, we reverse the court of appeals' judgment in part and render judgment that Champion take nothing.

Justice O'NEILL filed a concurring opinion, in which Justice HECHT and Justice JEFFERSON joined.

Chief Justice PHILLIPS did not participate in the decision.

Justice O'NEILL, concurring, in which Justice HECHT and Justice JEFFERSON joined.

I agree with the Court that the standard for official immunity is objective good faith. But I write separately to note that challenging the board members' deliberative actions in this case in negligence terms, when the claim is that the board members acted with bad intent, is inappropriate. If the members' decision was arbitrary or irrational, Champion might assert a substantive due-process claim. *See, e.g., Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 938 (Tex.1998).* Had Champion been treated differently from other similarly situated developers absent a rational basis, they might assert an equal-protection violation. *See id.* at 939. And if Champion was denied an appropriate and meaningful opportunity to be heard, procedural due process might be implicated. *See id.* But negligence simply has no application here where the board members' actions are alleged to be intentional. With this notation, I fully join the Court's opinion and concur in its judgment.