MEMORANDUM OPINION









 

 

 

 

 

 

 

 

 

MEMORANDUM OPINION

 

 

No. 04-07-00385-CV

 

John ANDERSON,
Jr.,

Appellant

 

v.

 

CITY OF SAN
ANTONIO and Robert Ojeda, in his official capacity as

 Chief of the San Antonio Fire Department, et al.,

Appellees

 

From the 73rd Judicial
District Court, Bexar County, Texas

Trial Court No. 2002-CI-05566

Honorable Gloria
Saldana, Judge Presiding

 

Opinion by:     Rebecca Simmons, Justice

 

Sitting:            Catherine
Stone, Justice

                        Sandee
Bryan Marion, Justice

                        Rebecca
Simmons, Justice

 

Delivered and
Filed:   May 21, 2008

 

AFFIRMED

 

This
appeal stems from a lawsuit filed by John Anderson, Jr. seeking declaratory,
injunctive and monetary relief from the City of San Antonio (“the City”) and
from Chief Robert Ojeda.  The trial court granted the motion for summary
judgment filed by Ojeda, individually, alleging official immunity,
justification and privilege, as well as the defense that Anderson caused his
own injury.  All parties agree the trial court’s grant of Ojeda’s affirmative
defense of official immunity allowed the City to gain derivative governmental
immunity.  Because official immunity bars Anderson’s claims against Ojeda, we
affirm the judgment of the trial court.

Factual Background

Appellant
John Anderson, Jr. is a lieutenant with the San Antonio Fire Department.  At
the end of 2001, through a competitive bidding process, Employee Benefit
Administrators, Inc. (EBA) was awarded the contract to be the City’s
third-party-benefits administrator for the health insurance benefits provided
to all City employees.  Although Anderson was the firefighter union’s chief
negotiator during the collective bargaining agreement, the facts are undisputed
that Anderson: (1) was not involved with EBA’s award of the contract with the
City; and (2) Anderson could not affect the amount of money EBA earned from the
City under the contract.  On December 26, 2001, Anderson signed a contract for
a part-time position with EBA to work as a consultant performing a statewide
public relations function and to possibly act as a liaison between EBA and its
clients.  In accordance with the Fire Department Regulations, on January 1,
2002, Anderson requested permission from Fire Chief Ojeda to work for EBA.[1]

            During
the next six weeks, EBA’s counsel and the city attorney exchanged at least four
letters regarding the City’s concern over whether Anderson’s employment with
EBA would 
violate the City’s Ethics Code.  Additionally, the City Attorney issued an
ethics opinion to Ojeda[2]
which provided as follows:

In summary, Mr.
Anderson may be retained by EBA provided that he abides by the standards of
conduct set forth in the Ethics Code and that he follow the Rules and
Regulations of the Fire Department.  He may not, however, represent EBA before
the City and/or perform such outside services with City equipment or on City
time.  Moreover, it is recommended that, given his position as Chief Negotiator
for the Union on the fire collective bargaining negotiations, he recuse himself
from such position while providing services for EBA or resign from his position
on the negotiation team.

 

On February 11,
2002, Chief Ojeda denied Anderson’s request for permission to work for EBA
stating as follows:

I have reviewed your
request for outside employment with the City’s Third Party Administrator,
Employee Benefits Administrators (EBA), and I hereby deny your request for
outside employment as proposed.  As you can see by the attached correspondence,
the City Attorney’s office has advised that you cannot represent EBA before the
City.  Ms. Roxanna Gonzales identifies the particular sections of the City’s
Ethics Code that prohibits this action.  As such, I cannot approve a request
for outside employment that would violate the Ethics Code.

 

As a result, Anderson ceased his employment with EBA.

Anderson filed suit seeking declaratory, injunctive and monetary relief from the City and
from Ojeda in his official capacity.  Additionally, he sought monetary damages
from Ojeda in his individual capacity for tortious interference with a contract
and violation of state statutes.  On January 22, 2007, the City of San Antonio
and Ojeda filed their second motion for summary judgment claiming that Anderson
failed to plead a viable cause of action, and that, even if he did, there was
no evidence showing that they violated the statutes pled.  Shortly thereafter,
Ojeda, individually, filed a motion for summary judgment alleging official
immunity, justification and privilege, as well as the defense that Anderson caused his own injury.  The trial court denied the City and Ojeda’s joint motion
for summary judgment, but did, however, grant summary judgment on all of
Ojeda’s affirmative defenses – official immunity, justification and privilege –
and found that Anderson caused his own injury.  This appeal followed.

Standard of
Review

When a defendant moves for summary judgment based on an
affirmative defense, like official immunity, the defendant must conclusively
prove each element of the defense as a matter of law.  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994).  The function of a
summary judgment is the elimination of patently unmeritorious claims or
untenable defenses.  Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929,
931 (1952).  We view the summary judgment proof in the light most favorable to
the nonmovant, and all doubts as to the existence of a genuine issue of
material fact are resolved in the non-movant’s favor.  See Nixon v. Mr.
Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985).  

Official
Immunity

Official immunity inures to all governmental employees
who perform discretionary functions in good faith and within their authority.  Chambers,
883 S.W.2d at 653.  To prove that Ojeda was entitled to official immunity, he
was required to establish by competent summary judgment evidence that the acts
complained-of were: (1) discretionary; (2) performed in good faith; and (3)
within the scope of his official duties. See id.; Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000).  Anderson concedes
Ojeda’s actions were discretionary and within the scope of his employment. 
Thus, the issue on appeal is whether Ojeda proved he performed these acts in
good faith.

The
test for good faith of a government official is also derived from the objective
standard adopted by the Chambers decision ― whether, under the
same or similar circumstances, a reasonable government official could have
believed that his actions were lawful based upon the information he possessed
at the time of his conduct.  Chambers, 883 S.W.2d at 656; Ballantyne
v. Champion Builders, Inc., 144 S.W.3d 417, 426 (Tex. 2004).  “This test of
good faith does not inquire into ‘what a reasonable person would have done,’
but into ‘what a reasonable [person] could have believed.’”  Ballantyne,
144 S.W.3d at 426; Kistner v. Pfannstiel, 107 S.W.3d 7, 11 (Tex. App.—San Antonio 2002, no pet.).

An
affidavit supporting a motion for summary judgment must set forth facts, not
legal conclusions.  See Krishnan v. Law Offices of Preston Henrichson, P.C.,
83 S.W.3d 295, 299 (Tex. App.—Corpus Christi 2002, pet. denied).  However, this
does not mean that logical conclusions based on stated underlying facts are
improper.  Montemayor v. Chapa, 61 S.W.3d 758, 764 (Tex. App.—Corpus Christi, 2001, no pet.).  Anderson asserts Ojeda’s affidavit provides nothing more
than mere conclusory statements and is therefore, insufficient to establish
good faith.  Wadewitz v. Montgomery, 951 S.W.2d 464, 466-67 (Tex. 1997).  Ojeda’s affidavit provided:

In January 2001, I
was presented with an application for outside employment by [Anderson]. . . . I
consulted with our Human Resources Department and the City Attorney’s Office
regarding this request as EBA had just recently entered into that contract with
the City.  I also had concerns due to [Anderson’s] position as chief negotiator
for the [union], which was in negotiations with the City of San Antonio on a
new Collective Bargaining Agreement.  Concern existed of potential conflicts of
interests and/or ethics violations in this employment, and on those grounds,
and acting on the advice of Human Resources and the City Attorney’s Office, I
denied the application.  My decision was based on a good faith belief that said
employment would be in violation of the City’s Ethics Code.  This decision was
not based on [Anderson’s] membership in the [union], but rather on the unique
potential for influence that he held as chief negotiator.

 

Anderson argues
that the statement “[m]y decision was based on a good faith belief that said
employment would be in violation of the City’s Ethics Code,” on its own, is in
direct conflict with the City’s ethics opinion[3]
and could not have been made in good faith.  Yet, this argument ignores that
Ojeda’s conclusion follows his rendition of the underlying facts upon which he
relied.

We
must, therefore, determine whether a reasonable government official could have
believed that Ojeda’s actions were lawful based upon the information he
possessed at the time of his conduct.  More specifically, as the Ballantyne Court explained:

When a public
official considers two courses of action that could reasonably be believed to
be justified, and selects one, he satisfies the good faith prong of official
immunity as a matter of law.  The inquiry is not what was the best course of
action, but whether [the government official] could have believed [his] actions
were justified at the time they were taken. To show good faith in this context,
we do not require the [government official’s action] to be legally correct,
only colorable.

 

Ballantyne,
144 S.W.3d at 426.

            Here,
Ojeda clearly had two choices before him: grant the application or deny the
application.  Although there may be disagreement regarding the merits of
Ojeda’s decision, a reasonably prudent person, in his position, could have
believed that the facts justified his decision.  Id.  The evidence before
Ojeda, including the correspondence between the attorneys and the City’s ethics
opinion, raised obvious concerns about potential violations of the City’s
ethics code.  Id.  Anderson may not agree that Ojeda’s decision was the
“best course of action,” but that is not the appropriate standard by which we
must judge Ojeda’s actions.  The proper standard is whether Ojeda could have
believed that his actions were justified at the time he denied the request.  Id.  His action need not be legally correct, only colorable.  Id.  

Based
on his affidavit, the continuous correspondence between the parties, and the
City’s ethics opinion, it is evident that Ojeda “considered the two courses of
action.”  In accordance with Ballantyne, the good faith prong of
official immunity is established as a matter of law.  Id.  

We, therefore, affirm the trial court’s grant of the summary judgment.

 

Rebecca Simmons, Justice








 









[1]  
The Fire Department regulations required a firefighter to submit a request to
the Fire Chief for permission to work any part-time job outside of the fire
department.

  





[2]  
This Ethics Opinion was the subject of a mandamus proceeding before this court,
In re Anderson, 163 S.W.3d 136, 142 (Tex. App.—San Antonio 2005, no
pet.), wherein the City was required to produce a copy of such to Anderson.





[3]  
The last paragraph of the opinion states “Mr. Anderson may be retained by EBA
provided that he abide by the standards of conduct set forth in the Ethics Code
and that he follow the Rules and Regulations of the Fire Department.”