Opinion issued November 10, 2011.

 

 

 

 

 

 



 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-11-00303-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



GARLAND D. ANDERSON, M.D., RANDAL J. URBAN, M.D.,
BILLY U. PHILIPS, PH.D., VICENTE
A. RESTO, M.D., HENRY F. EPSTEIN, M.D., DAVID H. WALKER, M.D., COURTNEY M.
TOWNSEND, JR., M.D., AND ROBERT M. HIRSCHFELD, M.D., Appellants

 

V.

 

DAVID BESSMAN, M.D., HARI DAYAL, PH.D., S. DAVID
HUDNALL, M.D., GOLDA ANNE KEVETTER LEONARD, PH.D., GREGG T. NAGLE, PH.D.,
WILLIAM H. NEALON, M.D., BRIAN PEERCE, PH.D., NANCY K. WILLS, PH.D., AND
CHARLES E. HOLZER III, PH.D., Appellees

 

 



On Appeal from the 212th District Court

 Galveston
County, Texas

Trial Court Cause No. 10CV4210 

 

 



OPINION

          Due
to financial exigencies that Hurricane Ike created, the University of Texas
Medical Branch at Galveston (“UTMB”) terminated a number of its faculty
positions.  The medical school’s provost
coordinated the termination process, and department chairs recommended faculty members
from their departments for termination. 
A group of faculty members,[1]
whose positions the school terminated, sued the provost and several department
chairs (collectively, “the administrators”),[2]
asserting various tort claims.  Relying
on section 101.106(f) of the Texas Tort Claims Act, the administrators moved to
dismiss the suit brought against them.  See Tex.
Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2010).  The trial court denied the motion.  On appeal, the administrators contend that
the trial court erred in refusing to dismiss the claims against them because
the decisions they made and carried out fell within the scope of their
employment, and thus section 101.106(f) precludes a suit against them in their
individual capacities.  We agree.  Accordingly, we reverse and remand with instructions
for the trial court to dismiss the claims against the administrators.   

Background

In September 2008, Hurricane Ike
struck Galveston Island.  The hurricane
damaged UTMB facilities and interrupted its operations and services.  As a result, the Board of Regents declared a
state of financial exigency.   It
instructed UTMB to cut approximately 3,000 full-time faculty and staff
positions.  

The Rules and Regulations of the
Board of Regents provide the process for eliminating academic positions due to
financial exigency.  Rule 31003 provides:


3.1     Committee
Recommendations. Upon determining the existence of a financial exigency and the
need to reduce academic positions or academic programs, or both, the president
. . . shall appoint a committee composed of faculty and administrative
personnel to make recommendations to the president as to which academic
position and and/or academic programs should be eliminated . . . .  

 

3.2     Assessment
of Academic Program.  The committee will
review and assess the academic programs . . . and identify those academic
positions that may be eliminated with minimum effect upon the degree programs
that should be continued.  The review
will include, but not be limited to, an examination of the course offerings,
degree programs, teaching specialties, and semester credit hour production. 

 

3.3     Review
consideration.    Upon determining that
one or more academic positions in a degree program or teaching specialty should
be eliminated, the committee will recommend the particular position or
positions to be terminated by reviewing the academic qualifications and talents
of holders of all academic positions in those degree programs or teaching
specialties, the needs of the program they serve, past academic performance,
and the potential for future contributions to the development of the
institution . . . . 

 

3.4     Tenure
Preference.  If, in the opinion of the
committee, two or more faculty members are equally qualified and capable of
performing a particular teaching role, the faculty member or members having
tenure shall be given preference over non-tenured faculty . . . . 

 

3.5     Recommendation.  Upon completion of its review, the committee
shall promptly recommend to the president those persons who may be terminated,
ranked in order of priority, with the reasons for their selection.  The president shall . . . determine which
academic positions are to be terminated because of the financial exigency and
shall give the holders of these positions written notice of the decision.  

 

David Callender, UTMB’s President,
instructed the UTMB Provost, Garland Anderson, to recommend the faculty
positions to terminate.   Pursuant to
this directive, Anderson met with the UTMB department chairs, including his
co-defendants, and instructed them to recommend which faculty members to
terminate from their respective departments. 
Routinely, UTMB department chairs evaluate department members’
performance; occasionally, department chairs recommend promotions or terminations
within the department.  Anderson asked
the department chairs to categorize members of their department into three
groups: (1) group “A” to include members crucial to the proper functioning of
the department; (2) group “B” to include members important to the department;
(3) and group “C” to include non-critical members whose loss would cause the
least disruption to the department.  

At President Callender’s further
instruction, Anderson appointed a six-member faculty committee to review the
department chairs’ recommendations.  
During the review, the department chairs explained their rationales for
placing individuals in group “C”.  The
committee questioned the department chairs about their selections and
deliberated privately.  The committee
then submitted a list of faculty members recommended for termination to Provost
Anderson.  Anderson delivered the list to
President Callender.  President Callender
fired the listed faculty members, including the faculty members who brought
this suit.  

All of the faculty members who are
party to this suit, save two, appealed President Callender’s decision to a
faculty appeals committee.  The appeals
committee concluded that Hurricane Ike had caused UTMB to experience a
financial exigency and that the decision to eliminate their positions as
faculty was neither arbitrary nor unreasonable. 
The appeals committee recommended that President Callender uphold each
termination. President Callender accepted the recommendation.  

In November 2010, some of the
aggrieved faculty members filed this suit for tortious interference with an
employment relationship, negligent misrepresentation, negligence, fraud, and
civil conspiracy.  The faculty members
allege that the administrators violated Rule 31003, terminated faculty
positions based on financial incentives and personal animosities, and had acted
in bad faith in recommending their termination. 


The administrators moved to dismiss
the suit against then, asserting that it was, as a matter of law, brought
against them in their capacities as UTMB employees.  They requested that the trial court order the
faculty members to substitute UTMB as the defendant or suffer dismissal of the
suit under the election of remedies provision of the Tort Claims Act.  See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f)
(allowing governmental employee to force claimant to dismiss employee and name
governmental employer as defendant instead by demonstrating that conduct at
issue was within scope of his or her employment).  The faculty members responded that the
administrators’ conduct did not fall within the scope of their employment. 

The parties proffered evidence in
connection with the jurisdictional challenge. See Bland Indep. Sch. Dist.
v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). Anderson testified by
deposition that Rule 31003 prescribes procedures for terminating academic
positions in light of a financial exigency. 
Anderson wrote to President Callender that the list he had prepared
complies with Rule 31003.   In an
affidavit in the trial court, Anderson also averred that he had fired faculty
as a part of his duties as Provost of UTMB, and he exercised these duties at
President Callender’s direction.  But he
admitted that he told one department chair not to recommend a newly hired
faculty member for termination.  Also, at
President Callender’s request, Anderson removed a faculty member from the
termination list.  According to Anderson,
personal animosity existed between certain department chairs and some of the
faculty members whose positions he terminated. 
In one instance, a department chair recommended a faculty member for
termination, because his patients had a higher rate of complications and longer
hospital stays than another similarly situated faculty member.  Anderson acknowledged that he and the department
chairs had received bonuses, in part, because UTMB met certain financial
objectives in 2009. 




 

 

Discussion

Standard of Review

A plea to the jurisdiction challenges
the trial court’s subject-matter jurisdiction to hear the case.  Bland
Indep. Sch. Dist., 34 S.W.3d at 554; Kamel v. Univ. of Tex. Health Sci. Ctr., 333 S.W.3d 676, 681 (Tex.
App.—Houston [1st Dist.] 2010, pet. denied). The existence of subject‑matter
jurisdiction is a question of law that we review de novo.  State
ex rel. State Dep’t of Hwys. & Pub. Transp. v. Gonzalez, 82 S.W.3d 322,
327 (Tex. 2002); Kamel, 333 S.W.3d at
681. We may not presume the existence of subject‑matter jurisdiction; the
burden is on the plaintiff to allege facts affirmatively demonstrating the
trial court’s subject-matter jurisdiction over the case. Tex. Ass’n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 443–44, 446 (Tex. 1993); Kamel,
333 S.W.3d at 681.  In deciding a plea to
the jurisdiction, a court may not consider the case’s merits, but only the
plaintiff’s pleadings and the evidence pertinent to the jurisdictional inquiry.
Cnty. of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002); Kamel, 333
S.W.3d at 681.




 

 

Section 101.106(f) of the Texas Tort
Claims Act 

 

Section 101.106(f) provides:

If a suit is filed against an employee of a governmental
unit based on conduct within the general scope of that employee’s employment
and if it could have been brought under this chapter against the governmental
unit, the suit is considered to be against the employee in the employee’s
official capacity only. On the employee’s motion, the suit against the employee
shall be dismissed unless the plaintiff files amended pleadings dismissing the
employee and naming the governmental unit as defendant on or before the 30th
day after the date the motion is filed.

 

Tex. Civ.
Prac. & Rem. Code Ann. § 101.106(f).  Thus, a defendant is
entitled to dismissal under section 101.106(f) upon proof that the plaintiff’s
suit (1) was based on conduct within the scope of the defendant’s employment
with a governmental unit and (2) could have been brought against the government
unit under the Tort Claims Act.  Id.; see also Franka v. Velasquez,
332 S.W.3d 367, 369 (Tex. 2011); Univ. of Tex. Health Sci. Ctr. v. Bailey, 332 S.W.3d 395, 401 (Tex. 2011).  The first component encompasses two
inquiries: whether the individual defendant was an employee of a governmental
unit and whether the acts alleged fall within the scope of that employment at
the relevant time.  See Poland v.
Willerson, No. 01-07-00198-CV,
2008 WL 660334, at *4 (Tex. App.—Houston [1st Dist.] March 13, 2008, pet.
denied); Turner v. Zellers,
232 S.W.3d 414, 417 (Tex. App.—Dallas 2007, no pet.).  The statute strongly favors dismissal of
governmental employees. Waxahachie Indep. Sch. Dist. v. Johnson, 181 S.W.3d 781, 785 (Tex. App.—Waco
2005, pet. denied).  

Scope of Employment 

It is undisputed that UTMB, a
governmental entity, employed the administrators.  Accordingly, we turn to whether the
administrators acted within the scope of their employment when they recommended
that the faculty members’ positions be terminated.  

The Tort Claims Act defines “scope of employment” as
“the performance for a governmental unit of the duties of an employee’s office
or employment and includes being in and about the performance of a task
lawfully assigned to an employee by competent authority.”  Tex.
Civ. Prac. & Rem. Code Ann. § 101.001(2).  Compare
Poland, 2008 WL 660334, at *7 (holding that doctor, who was supposedly
negligent in performing surgery on patient, acted in the scope of employment
within meaning of Act because he averred that he provided medical care in
course and scope of employment with governmental unit) and Harris Cnty. v. Gibbons, 150 S.W.3d 877, 883 (Tex. App.—Houston
[14th Dist.] 2004, no pet.) (holding that off-duty police officer, who
rear-ended another car, acted in scope of employment within meaning of Act
because officer was checking license number of different vehicle to determine
whether it was stolen when accident happened) with Kelemen v. Elliott, 260 S.W.3d 518, 524 (Tex. App.—Houston
[1st Dist.] 2008, no pet.) (finding no evidence that officer was acting in
scope of employment when he kissed fellow officer without consent while on duty)
and Terrell ex rel. Estate of Terrell v.
Sisk, 111 S.W.3d 274, 278 (Tex. App.—Texarkana 2003, no pet.) (holding that
employee, who killed person with car, did not act in scope of employment
because she was on her way to personal appointment in her own car).  

The faculty members maintain that the administrators
acted outside the scope of their employment because they acted without
authority.  According to the faculty
members, the department chairs did not use Rule 31003 factors to decide whom to
recommend to fire.  In addition, they
allege that Anderson did not allow the review committee to properly review the
department chairs’ recommendations because the review committee considered only
faculty members whom the department chairs had categorized as non-critical
members. 

“An official acts within the scope of her authority if
she is discharging the duties generally assigned to her.”  City of Lancaster v. Chambers, 883 S.W.2d 650, 658 (Tex. 1994)
(finding that on-duty police officers, pursuing suspect in squad car, did not
act outside scope of authority in driving without regard for safety of others);
see also Ballantyne v. Champion Builders, Inc., 144
S.W.3d 417, 425 (Tex. 2004) (holding that members of city’s Board of Adjustment
acted within scope of authority in revoking building permit even though court
had found that members were incorrect in revoking permit); Arbelaez v. Just Brakes Corp., 149 S.W.3d 717, 723 n.7 (Tex. App.—Austin
2004, no pet.) (“We have been unable to find a single case in Texas
jurisprudence that supports the proposition that an employee is not
within the course and scope of employment when the employee carries out the
express instructions of his employer in an activity that benefitted, even
indirectly, the employer’s business.”). 
Thus, we examine whether the administrators’ acts fall within the duties
generally assigned to them.

We conclude that they do. President Callender directed
Provost Anderson to recommend faculty members to fire so that UTMB could make
the required reductions in faculty. 
Anderson directed the department chairs to assess faculty members based
on their respective department’s needs. 
Part of a department chair’s job is to evaluate the performance of the
faculty members in their department.  At
President Callender’s request, Anderson chose a committee to review the
department chairs’ recommendations.  Each
of the administrators’ challenged acts fall within these tasks—ones, without
exception, assigned to them by a competent authority for the benefit of UTMB.  Rule 31003 governs the conduct of the
President and the review committee in terminating faculty members in a
financial exigency.  But Rule 31003 governs
neither the department chairs nor the provost in this matter.  It does not, for example, preclude the
President from requesting that the provost oversee the process for a reduction
in number of faculty.  Rule 31003 also
does not preclude department chairs, at the provost’s request, from
categorizing faculty members to assist the review committee in its evaluation.  No evidence exists that Anderson limited the
factors that the review committee could use in its assessment.  

The faculty members contend that the administrators acted
outside the scope of their employment because they brought personal motives to
bear in deciding who should be fired.  So
long as it falls within the duties assigned, an employee’s conduct is “within
the scope of employment,” even if done in part to serve the purposes of the
employee or a third person.
Dictaphone Corp. v. Torrealba, 520 S.W.2d 869, 872 (Tex. Civ.
App.—Houston [14th Dist.] 1975, writ ref’d n.r.e.) (employee’s performance
of duties to serve himself or a third person did not take him outside the scope
of employment); Best Steel Bldgs., Inc. v. Hardin, 553 S.W.2d 122, 128
(Tex. Civ. App.—Tyler 1977, writ ref’d n.r.e.) (“The fact that the preponderate
motive of the servant is to benefit himself or a third person does not prevent
the act from being within the scope of employment.”).  If the purpose of serving the employer’s
business motivates the employee, his acts are within the scope of employment. Best Steel Bldgs., Inc., 553
S.W.2d at 128; Arbelaez, 149 S.W.3d
at 723.  The administrators’ actions here
fall within the scope of their employment because they carried out their
supervisors’ directives for the benefit of UTMB—even if personal motives in
part persuaded them in the performance of their duty.  We hold that the faculty members have not
alleged any acts against the administrators that fall outside the general scope
of their employment. See Chambers,
883 S.W.2d at 658 (rejecting notion that high speed chase was outside the scope
of police officer’s work because they lacked discretion to drive in way that
endangers others); see also Ballantyne,
144 S.W.3d at 425 (holding that members of city’s Board of Adjustment acted
within scope of authority in revoking building permit where statute conferred
authority to revoke, even though court had determined that the Board was
incorrect).

Suit Could Have Been Brought under
the Act against UTMB 

Given that the pleadings allege acts
within the course and scope of the administrators’ employment, the faculty
members’ suit could have been brought under the Tort Claims Act against
UTMB.  See Tex. Civ. Prac. &
Rem. Code Ann. § 101.106(f); Franka, 332 S.W.3d at 375.  In Franka, the Texas Supreme Court construed
the phrase “could have been brought” in section 101.106(f), holding that, “‘all
common-law tort theories alleged against a governmental unit are assumed to be
‘under the Tort Claims Act’ for purposes of section 101.106.’” Id. at 369
(quoting Mission Consol. Indep. School
Dist. v. Garcia, 253 S.W.3d 653, 659 (Tex. 2008)).  

The faculty members’ causes of action
are tort claims.  Because we have
rejected their contention that the administrators’ actions were outside the
scope of their employment, we hold that the faculty members’ suit could have
been brought under the Act.  See City of El Paso v. Heinrich, 284
S.W.3d 366, 372 (Tex. 2009) (holding that suit alleging that official acted
without authority “must not complain of a government officer’s exercise of
discretion, but rather must allege, and ultimately prove, that the officer
acted without legal authority or failed to perform a purely ministerial act”).  Section 101.106(f) applies, and dismissal of
the administrators is proper.  




 

Conclusion

We hold that the administrators acted
within the scope of their employment. 
Thus, the faculty members’ suit against UTMB could have been brought
under the Texas Tort Claims Act.  Because
the administrators met both requirements of section 101.106(f), the trial court
erred in denying their motion to dismiss. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).  We
therefore reverse the order of the trial court and remand the case with
instructions for the trial court to dismiss the claims against the
administrators.     

   


 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Huddle.

 

 

 











[1]
          David Bessman, M.D., Hari Dayal,
Ph.D., S. David Hundall, M.D., Golda Anne Kevetter Leonard, Ph.D., Gregg T.
Nagel, Ph.D., William H. Nealon, M.D., Brian Peerce, Ph.D., Nancy K. Wills,
Ph.D., and Charles E. Holzer III, Ph.D.  

 





[2]
          The provost is Garland Anderson,
M.D., and the group of department chairs includes Randal J. Urban, M.D., Billy
U. Phillips, Ph.D., Vicente A. Resto, M.D., Henry F. Epstein, M.D., David H.
Walker, M.D., Courtney M. Townsend, Jr., M.D., and Robert M. Hirschfeld,
M.D.