Felix FOJTIK and Cecelia Fojtik, Individually and d/b/a Fojtik Auction & Equipment Company, Fojtik Farms, Fojtik Ranch Company, Appellants,

v.

FIRST NATIONAL BANK OF BEEVILLE, Jack Chesnut and Bevans Welder, Appellees.

No. 13–87–250–CV.

Court of Appeals of Texas, Corpus Christi.

May 26, 1988.

Rehearing Denied June 30, 1988.

James H. Robichaux, Corpus Christi, for appellants.

V. Camp Cuthrell, III, Tamara R. Tejml, Marion Williams, Frank E. Weathered, Corpus Christi, for appellees.

Before DORSEY, UTTER and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Felix and Cecelia Fojtik brought suit against First National Bank of Beeville and two of its directors, Jack Chesnut and Bevans Welder, for fraud, conspiracy, breach of contract, conversion, tortious interference and violations of the Texas Deceptive Trade Practices Act (DTPA).[1] After the close of the evidence but before submission of the case to the jury, the trial court directed a verdict against the Fojtiks on their conspiracy cause of action. The jury returned a verdict in favor of the Fojtiks against First National Bank for fraud, breach of contract and violations of the DTPA, but not for conversion or tortious interference. The jury answered all damage issues with findings of zero damages. The trial court entered a take-nothing judgment against the Fojtiks, of which they now complain in thirteen points of error. We reverse and remand.

Felix Fojtik is a farmer and rancher in the auction and equipment business. Jack Chesnut is the president of an International Harvester dealership in Beeville and a competitor of Fojtik. Chesnut and Bevans Welder also sit on the board of directors at First National Bank, and Welder is the bank's president.

In 1983, Fojtik met with Welder to discuss his lending needs and plans for expansion. On October 31 of that year, the bank established a $500,000.00 line of credit for Fojtik's auction business. Fojtik was to use the proceeds of his equipment sales to pay off the loan. The bank also agreed to loan Fojtik $250,000.00 for his farming and ranching businesses.

In late 1983, First National Bank began to impose additional terms and conditions on Fojtik's lines of credit, including 1) a requirement that Fojtik change his equipment sales business into a consignment operation, 2) a reduction of his auction line from $500,000.00 to $250,000.00, and 3) a reduction of his ranch line from $100,000.00 to $60,000.00.

According to the appellees, these conditions were imposed because Fojtik had overdrawn his lines of credit and had not complied with collateral ratio limits.[2] From Fojtik's standpoint, these terms constituted evidence of fraud, deceptive trade practices, breach of contract, and conspiracy between the bank and Fojtik's competitor, Jack Chesnut. Hence, Fojtik instituted the present lawsuit.

By his first, second, and third points of error, Fojtik asserts that the jury's findings of zero damages are against the great weight and preponderance of the evidence and fatally conflict with the findings on liability and causation.

After the jury returned its verdict, Fojtik filed a motion for judgment which stated:

While Plaintiffs disagree with the findings of the jury and feel there is a fatal defect which will support a new trial, in the event the Court is not inclined to grant a new trial prior to the entry of judgment, Plaintiffs pray the Court enter the following judgment. Plaintiffs agree

---

1. Tex.Bus. & Com.Code Ann. § 17.41 et seq. (Vernon 1988).

2. Welder testified at trial that one condition of the auction loan was what he called a "50/75 collateral ratio limit," meaning that the bank would not lend more than 50% of the value of Fojtik's equipment nor more than 75% of the cost of new equipment. Fojtik denied that such a limit had been agreed to.

only as to the form of the judgment but disagree and should not be construed as concurring with the content and result.

It is settled law that a motion for judgment on the verdict amounts to an affirmation that the jury findings are supported by the evidence. *Whitehead v. Reiger*, 6 S.W. 2d 745, 747 (Tex.Comm'n App.1928, opinion adopted); *Russell v. Dunn Equipment, Inc.*, 712 S.W.2d 542, 545 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Thus, Fojtik may not complain that the evidence fails to support the jury's findings on damages. *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 322 (Tex.1984). Nor may he take a position inconsistent with the findings or attempt to attack their validity when such findings form the basis of the court's judgment. *See id.* at 321–22. Fojtik's first three points of error consequently may not be considered on appeal.

■ In regard to the language in the motion to the effect that Fojtik "disagree[s] with the findings of the jury," and does not concur with the "content and result" of the judgment, we again refer to the *Litton* opinion wherein our Supreme Court stated:

We disapprove, however, Litton's argument that it reserved the right to complain about the judgment, because it accompanied its motion for judgment with a brief in which it took back what it urged in its motion. Litton's trial brief that accompanied its motion reserved the right to "challenge any adverse judgment based upon the verdict." We disapprove a practice by which a party, by motion, induces the trial court on the one hand to render a judgment, but reserves in a brief the right for the movant to attack the judgment if the court grants the motion. Litton could not have it both ways.

*Litton*, 668 S.W.2d at 322.

We see no distinction between Fojtik's reservation of the right to complain in the instant case and the attempted reservation in *Litton. See Russell*, 712 S.W.2d at 545.

Points one, two and three are overruled.

■ Point of error five states the trial court erred in excluding the out-of-court statement of First National Bank director Edward Wicker.

During the direct examination of Fojtik's accountant, Jackie Green, the following exchange took place.

Q: ... have you ever had occasion to be in the presence of the discussion of Felix Fojtik's dealings with the bank where the discussions were held by any other officer or director of the bank?

A: Yes, sir.

Q: When did those discussions take place?

A: I[t] would have been Labor Day of 1984, at the invitational golf tournament at the country club.

Q. Who with the bank said anything with respect to Felix's business with the bank?

A: Mr. Wicker.

Q: Who is Mr. Wicker?

A: I believe he's on the board of directors at the First National Bank.

\* \* \* \* \* \*

Q: What is it that Mr. Wicker said with respect to Felix Fojtik's business?

MR. CUTHRELL: Your Honor, I'm going to object to it until Mr. Robichaux can establish that Mr. Wicker was speaking as a director of the bank. In—

THE COURT: Yes.

MR. CUTHRELL: —that capacity it would be hearsay.

THE COURT: Sustain the objection.

Fojtik later made an offer of proof during which Green testified that Wicker's comment was, "We have him just about broke and now we're going to put him out of business." When asked who Wicker was referring to when he said "we," Green stated he assumed it was First National Bank. The trial court excluded the statement from evidence as inadmissible hearsay.

Fojtik argues the statement is not hearsay, but rather an admission of an agent as

defined in Tex.R.Evid. 801(e)(2)(D). We agree. Rule 801(e)(2)(D) sets forth as an exclusion from the hearsay rule "a statement by [a party's] agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship...." Here, it is undisputed that Wicker was on the bank's board of directors and was therefore an agent of the bank at the time he made the comment in question. In regard to whether the matter was "within the scope" of Wicker's agency, appellees argue there was no clear evidence that Wicker was actually referring to or speaking on behalf of the bank. However, Green's assertion that the word "we" meant the First National Bank was neither objected to nor refuted. Thus, appellees' argument goes merely to the weight and credibility of Green's testimony. *See State v. Buckner Construction Co.,* 704 S.W.2d 837, 846 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).[3]

■ Having found error by the trial court, we will now address the question of harm.

Tex.R.App.P. 81(b)(1) states:

No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case....

Special Issue No. 16 in the Charge of the Court reads:

Did First National Bank of Beeville, by and through its authorized representatives, interfere with the plaintiff's management and operation of his business thereby affecting his contractual relations with his customers?

## INSTRUCTION

To find an interference, it must be established that (1) there is a contract subject to interference; and (2) the act of interference was willful and intentional; and (3) such intentional act was a proximate cause of Plaintiff's damages; and (4) actual damage or loss occurred.

The jury answered this issue in the negative.

Wicker's statement, when coupled with evidence of the "additional conditions" imposed by the bank on Fojtik's line of credit, would have constituted strong evidence of tortious interference. Since the jury failed to find in favor of Fojtik on this cause of action, we conclude that the trial court's error probably resulted in an improper judgment. Point of error five is sustained.

In his petition, Fojtik alleged that "pursuant to a plan, scheme and design Defendants Welder, Beeville Bank and Chesnut *conspired* to disrupt, tortiously interfere with, and ultimately put out of business Plaintiff's auction company, and thereby eliminate one of Chesnut's prime competitors (emphasis added)." His sixth point of error asserts the trial court erred in directing a verdict in favor of all defendants on the issue of civil conspiracy.

In reviewing an instructed verdict, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Henderson v. Travelers Insurance Co.,* 544 S.W.2d 649, 650 (Tex.1976); *Sullivan*

---

**3.** *See also* Wilborn, *Article VIII: Hearsay,* 20 Hous.L.Rev. 477, 502 (1983), wherein the author states:

The inclusion of rule 801(3)(2)(D) is probably the most significant change from prior Texas law on the subject of admissions. It overturns the much-criticized holding of *Big Mack Trucking Co. v. Dickerson,* [497 S.W.2d 283, 288 (Tex.1973)] which limited the category of statements of an agent or servant that are admissible against the principal or master to those statements that were within the scope of the employee's authority, if any, to speak on the principal's behalf. Under the new rule, so long as the agent's or servant's statement is made during the existence of the employment relationship and concerns a matter within the scope of the employment, it is admissible against the principal, even though the employee had no authority to speak for the principal.

*v. Methodist Hospitals,* 699 S.W.2d 265, 274 (Tex.App.—Corpus Christi 1985), *writ ref'd n.r.e.,* 714 S.W.2d 302 (Tex.1986). In doing so, we must consider all evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *C.S.R. Inc. v. Industrial Mechanical, Inc.,* 698 S.W.2d 213, 216 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

■ The essential elements of civil conspiracy are: (1) two or more persons (2) an object to be accomplished (3), a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result. *Massey v. Armco Steel Company,* 652 S.W.2d 932, 934 (Tex.1983).

■ Appellees' first counter-argument on this point is that Fojtik failed to establish a meeting of minds between "two or more persons." Citing as authority *Christopher v. General Computer Systems,* 560 S.W.2d 698 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), they specifically assert that by definition, a corporation and its agents constitute a single "person" and therefore cannot form a conspiracy.

In *Christopher,* 560 S.W.2d at 709, the court held:

> We agree with the decisions cited by appellant to the effect that a corporation cannot conspire with itself, no matter how many of its agents may participate in the corporate action.

The underlying rationale for this holding, of course, is that the acts of a corporation's agents are deemed to be acts of the corporation itself. *See Nelson Radio Supply Co. v. Motorola,* 200 F.2d 911, 914 (5th Cir.1952).

■ While we agree with the above rules of law, we find them inapplicable to the case at bar. Fojtik's petition asserts Chesnut was "on the Board of Directors of Defendant Beeville Bank," *and* was "the owner of an International Harvester dealership-franchise in the Beeville area which was in direct competition with Plaintiff Fojtik." These facts were undisputed at trial. Hence, it is conceivable that Ches-

nut, if he had in fact conspired with the bank, did so in his capacity not as a corporate agent but as an independent equipment dealer.

Appellees next argue that the trial court did not err in directing the verdict because there was no evidence to support the conspiracy claim.

At trial, the following evidence was offered to prove the existence of a conspiracy: 1) the imposition of "additional conditions" on Fojtik's line of credit, 2) the bank's decision to "bounce" certain checks pertaining to the auction line, 3) an inverse relation between the growth in Fojtik's equipment sales and the decline in Chesnut's sales, and 4) Ed Wicker's out-of-court statement (previously addressed under point of error five).

Viewing the foregoing evidence in the light most favorable to Fojtik, we find that he raised a fact issue on the existence of a conspiracy between Chesnut, Welder and First National Bank. Point of error six is sustained.

Given our disposition of points five and six, Fojtik's remaining points of error are indispositive and need not be addressed.

The judgment of the trial court is REVERSED and the cause REMANDED for new trial.