OPINION
 

 JIM R. WRIGHT, Chief Justice.
 

 Julie Crouch was employed at Tarleton State University as the annual giving officer. After her employment was terminated, Crouch sued her former supervisor, Andrea Trinque, and Trinque’s supervisor, Koy Floyd. Crouch asserted claims of intentional infliction of emotional distress, defamation, tortious interference, and conspiracy. The defendants filed a traditional motion for summary judgment based upon sovereign immunity,
 
 [1]
 
 official immunity, and the lack of any genuine issue of material fact in each of the causes of action asserted by Crouch. The trial court granted the defendants’ motion without specifying the grounds therefor and entered judgment that Crouch take nothing on her claims. We affirm in part and reverse and remand in part.
 

 Issues
 

 Crouch presents seven issues for review. In the first, she contends in a general manner that the trial court erred in rendering summary judgment against her.
 
 [2]
 
 In the second issue, Crouch complains that the trial court erred in failing to sustain her objections to the defendants’ summary judgment evidence. In the third issue, which relates to official immunity, Crouch contends that summary judgment was improper because an issue of fact existed as to whether the defendants acted in good faith. In the fourth, fifth, sixth, and seventh issues, Crouch argues that summary judgment was erroneous because issues of fact existed as to her claims for defamation, tortious interference, intentional infliction of emotional distress, and conspiracy.
 

 Evidentiary Objections
 

 Crouch raised several objections to the defendants’ summary judgment evidence and brought these objections to the attention of the trial court. In her second issue on appeal, Crouch complains of the trial court’s failure to sustain these objections. The defendants assert that Crouch failed to preserve the issue for appeal because she did not get a ruling on her objections.
 
 *422
 
 Even though the trial court did not rule on the objections, Crouch preserved the issue by bringing her objections to the trial court’s attention and by subsequently objecting to the trial court’s failure or refusal to rule.
 
 See
 
 Tex.R.App. P. 33.1(a).
 

 Crouch objected that several portions of the defendants’ affidavits contained inadmissible hearsay, opinion testimony, conclusions, speculations, and vague statements. A trial court has discretion when ruling on the admission or exclusion of summary judgment evidence.
 
 Harris v. Showcase Chevrolet,
 
 231 S.W.3d 559, 561 (Tex.App.-Dallas 2007, no pet.). After reviewing the affidavits and the objections, we hold that the trial court did not abuse its discretion by failing to sustain Crouch’s objections. Moreover, Crouch has not shown that the admission of the particular evidence was harmful.
 
 See Doncaster v. Hernaiz,
 
 161 S.W.3d 594, 601 (Tex.App.San Antonio 2005, no pet.). The second issue is overruled.
 

 Summary Judgment Standard
 

 A trial court must grant a motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c);
 
 Lear Siegler, Inc. v. Perez,
 
 819 S.W.2d 470, 471 (Tex.1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law.
 
 Am. Tobacco Co. v. Grinnell,
 
 951 S.W.2d 420, 425 (Tex.1997). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment.
 
 City of Houston v. Clear Creek Basin Auth.,
 
 589 S.W.2d 671, 678-79 (Tex.1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant.
 
 Am. Tobacco Co.,
 
 951 S.W.2d at 425;
 
 Nixon v. Mr. Prop. Mgmt. Co.,
 
 690 S.W.2d 546, 548-49 (Tex.1985). The appellate court “must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented” and may not ignore “undisputed evidence in the record that cannot be disregarded.”
 
 Goodyear Tire & Rubber Co. v. Mayes,
 
 236 S.W.3d 754, 755, 757 (Tex.2007).
 

 Official Immunity
 

 One ground upon which the defendants moved for summary judgment was official immunity. Common law official immunity is based on the need for public officials to act in the public interest with confidence and without the hesitation that could be caused by subjecting them to litigation.
 
 Ballantyne v. Champion Builders, Inc.,
 
 144 S.W.3d 417, 424 (Tex.2004). Official immunity is an affirmative defense that protects government employees in their individual capacities from liability related to the performance of discretionary duties if the actions are within the scope of the employee’s authority and are performed in good faith.
 
 City of Lancaster v. Chambers,
 
 883 S.W.2d 650, 653 (Tex.1994). Because official immunity is an affirmative defense, the defendants had the burden to establish each element as a matter of law.
 
 See Ballantyne,
 
 144 S.W.3d at 424. If we determine that the defendants met this burden, then we must determine whether Crouch came forward with summary judgment evidence to the contrary.
 
 See Eastland County Coop. Dispatch v. Poyner,
 
 64 S.W.3d 182, 192 (Tex.App.-Eastland 2001, pet. denied).
 

 Public officials act within the scope of their authority if they are discharging the duties generally assigned to
 
 *423
 
 them.
 
 Ballantyne,
 
 144 S.W.3d at 424;
 
 Chambers,
 
 888 S.W.2d at 658. A discretionary duty is one that involves personal deliberation, decision, and judgment.
 
 Ballantyne,
 
 144 S.W.3d at 425. The defendants presented summary judgment evidence showing as a matter of law that they were public officials performing discretionary duties within the scope of their authority. Crouch does not dispute that these two elements were established by the summary judgment proof. She does, however, argue that the defendants failed to prove as a matter of law that they acted in good faith and that the defendants’ motion failed to address immunity with respect to numerous allegations made by Crouch, including an unnecessary and intimidating police presence at Crouch’s termination, Trinque’s verbal abuse of Crouch, and an implication that Crouch had misappropriated money from Tarleton.
 

 To determine whether a public official has acted in good faith, we use an objective standard, asking whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred.
 
 Joe v. Two Thirty Nine Joint Venture,
 
 145 S.W.3d 150, 164 (Tex.2004);
 
 Ballantyne,
 
 144 S.W.3d at 426;
 
 Chambers,
 
 883 S.W.2d at 656. The standard of good faith with respect to official immunity is not a test of carelessness, negligence, or motivation and does not inquire into what a reasonable person
 
 “would have done
 
 ” but what a reasonable person
 
 “could have believed.” Ballantyne,
 
 144 S.W.3d at 426.
 

 The defendants produced summary judgment evidence that included the affidavits of both defendants and deposition excerpts from all three parties. According to Trinque’s affidavit, she was employed by Tarleton as the Director of Development and was Crouch’s direct supervisor. Trinque reported to Floyd, the vice president of Institutional Advancement. Trin-que’s affidavit detailed Crouch’s responsibilities at Tarleton and various incidents indicating that Crouch failed to perform her job adequately, failed to follow appropriate guidelines and office policy, acted in a hostile and confrontational manner toward Trinque and a coworker, and refused to follow instructions. During one of the unpleasant conversations between Crouch and Trinque, Crouch stated that the only way she would be promoted was if Trinque died or Crouch’s coworker left.
 

 Floyd’s affidavit indicated that he supervised Trinque’s department and that he and Trinque discussed issues relating to Crouch’s performance. Trinque informed Floyd of an incident during which Crouch had been verbally aggressive and acted inappropriately. Trinque also informed Floyd about various shortcomings in Crouch’s job performance, including the failure to produce a financial report for the Greater Tarleton Annual Fund and the failure to adequately monitor that account such that the expenses exceeded the income by $29,000. Floyd also indicated that he had been contacted by three university donors regarding Crouch’s job performance and employment evaluation. Crouch had contacted these donors and asked them to intercede with Floyd on her behalf: an action that Floyd deemed inappropriate. Floyd asked for and received permission to terminate Crouch’s employment. Based upon the information he had, Floyd arranged for a police officer to be present when Crouch was notified of her termination.
 

 The defendants’ summary judgment evidence established that their actions were taken in good faith. Based upon the facts as presented in the defendants’ summary judgment evidence, a reasonably prudent
 
 *424
 
 official could have believed his conduct was justified under the circumstances. Crouch, however, responded to the defendants’ motion for summary judgment and produced controverting evidence tending to show that no reasonable person in Trin-que’s position could have thought the facts were such that they justified her acts.
 
 See Chambers,
 
 883 S.W.2d at 657;
 
 see also Vela v. Rocha,
 
 52 S.W.3d 398, 405 — 07 (Tex.App.-Corpus Christi 2001, no pet.).
 

 In her affidavit, Crouch disputed many of the factual statements made by the defendants. According to Crouch, Trin-que initiated a campaign to torment Crouch and ultimately see that Crouch’s employment was terminated. Crouch stated that Trinque never gave her the authority or the discretion to direct the Greater Tarleton Annual Fund, that Crouch merely carried out Trinque’s directions with respect to the fund, and that the blame for the shortfall in the account belonged to Trinque. According to Crouch, she had no authority to write checks on the account and took no money from the account; all expenditures were authorized by Trinque. Although Crouch agreed that she had been reprimanded for her use of leave time, she rebutted some of the statements made about her excessive absences from work. Crouch gave a different version of a meeting that she had had with Trinque regarding the leave policy and stated that Trinque informed her she had to take off because she had too many hours of “comp time” from working tremendous hours on work-related events. Crouch also rebutted the facts of another incident that Trinque deemed inappropriate regarding the interviewing of student workers. Another incident that Crouch controverted related to Crouch having previously been the victim of domestic abuse. Crouch had told Trinque about the ordeal of being a victim of domestic abuse. Trin-que, however, turned the story around and attempted to justify her fear of Crouch with her alleged knowledge that Crouch had previously assaulted someone and had been arrested for that crime. Crouch presented documented proof that she had not been arrested for a crime involving domestic abuse but had instead been a victim. Crouch also disputed Trinque’s statements about Crouch refusing to follow instructions regarding the award of an armoire at a charity auction and the general handling of the situation. Crouch indicated in her affidavit that the reason she failed to produce the financial report as asked was that Trinque had not trained her on that aspect of her job.
 

 Crouch further stated that she did not behave in a confrontational or angry manner toward Trinque or any coworker but, rather, that Trinque behaved toward Crouch in ways that were confrontational, angry, physically assaultive, verbally abusive, and intimidating. Crouch reported one incident in which Trinque called Crouch into Trinque’s office and asked her to sign a three-page disciplinary document. When Crouch refused to sign the document because she did not agree with its content, Trinque raised her voice and told Crouch she had to sign it. Trinque refused to allow Crouch to leave the office, blocking the door and grabbing Crouch’s arm. Trinque informed Crouch that her word would be believed over Crouch’s. Trinque ultimately tore up the disciplinary report and said something like, “Let’s pretend this never happened.” After four hours of “abuse and intimidation,” Trinque allowed Crouch to leave the room.
 

 Viewing all of the summary judgment evidence, we hold that reasonable jurors could differ in their conclusions with respect to Trinque’s good faith. In light of Crouch’s controverting evidence, we cannot determine as a matter of law
 
 *425
 
 that a reasonable person in Trinque’s position could have believed her conduct was justified. Thus, an issue of fact existed as to whether Trinque was entitled to official immunity. The summary judgment evidence with respect to Floyd, however, established that a reasonable person in Floyd’s position could have believed that his conduct was justified. Thus, Floyd established the affirmative defense of official immunity as a matter of law, and summary judgment in Floyd’s favor was proper. However, if summary judgment was granted to Trinque on the basis of official immunity, it was erroneous. The third issue is sustained as to Trinque.
 

 Claims Against Trinque
 

 Next, we must address whether Trinque was entitled to summary judgment on the particular claims asserted against her.
 

 1. Defamation.
 

 In her fourth issue, Crouch asserts that summary judgment was improper because a fact issue existed regarding her claim for defamation. To be entitled to summary judgment on the defamation claim, Trinque must have either established a defense or disproved one of the following elements: (1) that Trinque published a statement, (2) that the statement was defamatory concerning Crouch, or (3) that Trinque acted with negligence regarding the truth of the statement.
 
 See WFAA-TV, Inc. v. McLemore,
 
 978 S.W.2d 568, 571 (Tex.1998). In her petition, Crouch alleged that she was defamed by false accusations and statements publicized by Trinque. Trinque asserted the defense of privilege.
 

 An employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing.
 
 Randall’s Food Mkts., Inc. v. Johnson,
 
 891 S.W.2d 640, 646 (Tex.1995). The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate.
 
 Id.
 
 However, the privilege is defeated if the statement was motivated by actual malice existing at the time of publication.
 
 Id.
 
 In the defamation context, a statement is made with actual malice if the statement is made with knowledge of its falsity or with reckless disregard as to its truth.
 
 Id.
 
 To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice.
 
 Id.
 

 We hold that Trinque failed to conclusively establish an absence of malice. The summary judgment evidence was controverted as discussed above, resulting in an issue of fact as to whether Trinque made statements knowing of their falsity or with reckless disregard as to their truth. Because Trinque did not as a matter of law establish a qualified privilege or defense or disprove an element of defamation, she was not entitled to summary judgment on the cause of action for defamation. The fourth issue is sustained as to Trinque.
 

 2. Tortious Interference.
 

 In her fifth issue, Crouch asserts that summary judgment was improper because issues of fact existed on her claim for tortious interference with an employment relationship. Trinque moved for summary judgment on the tortious interference claim on two grounds. First, she asserted that Crouch could not recover for tortious interference because Crouch was an at-will employee without an employment contract. However, the lack of an employment contract does not circumscribe the availability of a claim for tor-
 
 *426
 
 tious interference. Under Texas law, an at-will employee may recover for tortious interference with a contract of employment terminable at will.
 
 Sterner v. Marathon Oil Co.,
 
 767 S.W.2d 686, 688-89 (Tex.1989). Second, Trinque asserted the affirmative defense of justification, citing
 
 Texas Beef Cattle Co. v. Green,
 
 921 S.W.2d 203, 211 (Tex.1996). Justification is an affirmative defense and, therefore, must be pleaded.
 
 See
 
 Tex.R. Civ. P. 94;
 
 Sterner,
 
 767 S.W.2d at 690. Although justification was asserted as a defense in the motion for summary judgment, it was not included in the defendants’ pleadings. In her response to the motion for summary judgment, Crouch pointed out that justification is an affirmative defense that must be pleaded and that the defendants had failed to plead justification. The defendants did not amend their pleadings to include justification. Consequently, we must agree with Crouch that Trinque cannot rely on justification as a basis to uphold the summary judgment as to tortious interference. The fifth issue is sustained as to Trinque.
 

 3. Intentional Infliction of Emotional Distress.
 

 In the sixth issue, Crouch contends that summary judgment was erroneous on her claim for intentional infliction of emotional distress because an issue of fact existed as to whether the defendants’ conduct was extreme and outrageous. To recover for intentional infliction of emotional distress, a plaintiff must prove (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe.
 
 GTE Sw., Inc. v. Bruce,
 
 998 S.W.2d 605, 611 (Tex.1999). To be extreme and outrageous, conduct must be “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.”
 
 Id.
 
 Generally, insensitive behavior, rude behavior, mere insults, indignities, threats, annoyances, and petty oppressions do not rise to the level of extreme and outrageous conduct.
 
 Id.
 
 at 612. Texas has taken a particularly strict view on claims for intentional infliction of emotional distress in the employment setting, requiring that an employee prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.
 
 Id.
 
 at 612-13.
 

 The summary judgment evidence in this case, even when viewed in Crouch’s favor, does not rise to the level of extreme and outrageous conduct required to prove intentional infliction of emotional distress in an employment setting. Consequently, Crouch’s sixth issue is overruled.
 

 A
 
 Conspiracy.
 

 In her final issue, Crouch contends that the trial court erred in entering summary judgment on her claim for conspiracy. The elements of a civil conspiracy claim are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as the proximate result.
 
 Massey v. Armco Steel Co.,
 
 652 S.W.2d 932, 934 (Tex.1983).
 

 Trinque and Floyd moved for summary judgment on the conspiracy claim on the basis that Tarleton and its employees constitute a single entity, which cannot conspire with itself.
 
 See Hilliard v. Ferguson,
 
 30 F.3d 649 (5th Cir.1994);
 
 Wilhite v. H.E. Butt Co.,
 
 812 S.W.2d 1, 5 (Tex.App.-Corpus Christi 1991, no writ),
 
 overruled on other grounds by Cain v. Hearst Corp.,
 
 878 S.W.2d 577, 578-79 (Tex.
 
 *427
 
 1994). Crouch argues that the general rule that a corporation cannot conspire with itself through its agents does not apply here because she has not sued Tarle-ton and has not alleged that Trinque and Floyd entered into a conspiracy with Tarleton but, rather, have conspired between themselves. We disagree. Employees or agents of a principal acting within the course and scope of their employment or agency relationship cannot enter into a conspiracy with each other so long as they are not acting outside their capacity as an employee or agent or are not acting for a personal purpose of their own; the acts of the employees or agents are acts of the principal, and the general rule applies.
 
 See Tex.-Ohio Gas, Inc. v. Mecom,
 
 28 S.W.3d 129, 138 (Tex.App.-Texarkana 2000, no pet.);
 
 Atl. Richfield Co. v. Misty Prods., Inc.,
 
 820 S.W.2d 414, 421 (Tex.App.-Houston [14th Dist.] 1991, writ denied).
 

 When does an agent act outside his capacity as an employee or agent or act for a personal purpose of his own?
 

 Fojtik v. First National Bank of Beeville,
 
 752 S.W.2d 669 (Tex.App.-Corpus Christi 1988),
 
 writ denied,
 
 775 S.W.2d 632 (Tex.1989), is an example of a situation where the employee or agent acted outside of his capacity as an agent. Fojtik was engaged in the farming and ranching business. He also operated an auction and equipment business. Jack Chesnut was a competitor. Chesnut also sat on the board of directors of a bank that had entered into various loan arrangements with Fojtik. Bevans Welder was the president of that bank and was also on its board of directors. Claiming that the bank was changing the terms of the arrangement it had made with him, Fojtik sued the bank, Chesnut, and Welder upon various legal theories including conspiracy. Fojtik alleged that they had conspired to put him out of business so that he would be eliminated as one of Chesnut’s main competitors. The trial court directed a verdict in favor of the defendants on the conspiracy claim. On appeal, the court noted the general rule that a corporation cannot conspire with itself.
 
 Fojtik,
 
 752 S.W.2d at 673. It also noted the rationale for the rule: the acts of a corporation’s agent are deemed to be the acts of the corporation.
 
 Id.
 
 However, the court found that the general rule was inapplicable to the facts of that case. Chesnut was both on the board of the bank and the owner of a business that was in direct competition with Fojtik. “Hence it is conceivable that Chesnut, if he had in fact conspired with the bank, did so in his capacity not as a corporate agent but as an independent equipment dealer.”
 
 Id.
 

 Here, even assuming that Trinque acted in a mean, vicious, and vindictive manner, all of the acts that appear in the summary judgment proof show that she was acting within her capacity as an employee of Tarleton. The summary judgment evidence does not show that she was off on some personal purpose outside the scope of her duties as was the case in
 
 Fojtik.
 
 Although Trinque might have chosen a more appropriate, less vindictive way to perform those duties, she was acting, however offensively, within her capacity as an employee of Tarleton. The trial court did not err in granting summary judgment on Crouch’s conspiracy claim. The seventh issue is overruled.
 

 This Court’s Ruling
 

 The trial court’s take-nothing summary judgment is affirmed in part and reversed and remanded in part. We affirm as to all causes of action asserted against defendant Koy Floyd and also as to the causes of action for intentional infliction of emotional distress and conspiracy asserted against
 
 *428
 
 defendant Andrea Trinque. We reverse the summary judgment as to the causes of action asserted against Trinque for defamation and tortious interference, and those causes of action are remanded for further proceedings in the trial court.
 

 [1]
 

 . We note that sovereign immunity is not addressed in the parties’ briefs and is not an issue in this appeal. In their motion for summary judgment, the defendants asserted sovereign immunity to the extent that they were being sued in their official capacities. Crouch responded that she was suing the defendants in their individual capacities only, not their official capacities.
 

 [2]
 

 . Crouch’s substantive arguments are addressed in the third, fourth, fifth, sixth, and seventh issues. To the extent that these issues are overruled, the first issue is also overruled. To the extent that they are sustained, the first issue is also sustained.