

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-13-00884-CV

Kenneth Mark **DORROUGH**,
Appellant

v.

John Murray **FAIRCLOTH** and Helen Bowen,
Appellees

From the 216th Judicial District Court, Bandera County, Texas
Trial Court No. CV-11-320
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  July 30, 2014

REVERSED, VACATED, AND DISMISSED WITH PREJUDICE

In response to a complaint that Appellee John Faircloth was interfering with others' right

to fish, Appellant Kenneth Mark Dorrough, a deputy game warden, entered Faircloth's lakefront

property.  He saw Appellee Helen Bowen, Faircloth's wife, questioned her briefly, and then

questioned Faircloth.  After a heated verbal exchange between Faircloth and Dorrough, Appellees

sued Dorrough alleging several intentional torts, and moved for a temporary injunction against

Dorrough.  The trial court granted the Appellees' motion.  Asserting his immunity from suit as a

deputy game warden, Dorrough twice moved for summary judgment.  The trial court denied both

of Dorrough's motions, and he filed this interlocutory appeal of the latter order. For the reasons given below, we reverse the trial court's order, vacate the temporary injunction, and dismiss Appellees' suit with prejudice.

## BACKGROUND

Appellees, a married couple, own lakefront property on Medina Lake. In September 2009, because of a drought, land adjacent to the Faircloths' property that had been underwater was exposed and dry. Dorrough received a telephone complaint from Curtis Coolidge, an off-duty San Antonio police officer. Coolidge asserted that John Faircloth prevented him from driving his golf cart across the lake bed while Coolidge and his children were searching for a place to fish.

In response, Dorrough entered the Faircloths' property to investigate Coolidge's complaint. Dorrough went to the Faircloths' house, knocked on the door, looked into their windows, and then saw Helen Bowen outside. Dorrough questioned Bowen briefly. As Dorrough was leaving, Faircloth returned home. Dorrough questioned Faircloth, and their conversation escalated into a verbal confrontation. The Faircloths insisted Dorrough leave their property, and he complied.

Based on this encounter, Appellees sued Dorrough for trespass to real property, threat of bodily injury, intrusion on seclusion, and intentional infliction of emotional distress. They also moved for a temporary injunction to prevent Dorrough from approaching them or their property.

Dorrough answered and asserted that, at the time of the confrontation, he was a properly commissioned deputy game warden. Dorrough initially asserted he was immune from suit under the election of remedies provision of the Texas Tort Claims Act.[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) (West 2005). After the trial court granted the Faircloths' temporary

---

[1] Dorrough is represented by the Office of the Attorney General.

injunction and denied Dorrough's motion to dismiss and no evidence summary judgment, Dorrough filed a motion for reconsideration.

In his motion for reconsideration, Dorrough for the first time cited *Filarsky* and asserted common-law official immunity as a defense. *See Filarsky v. Delia*, 132 S. Ct. 1657, 1661–62 (2012). The trial court denied his motion for reconsideration but abated the cause pending resolution of this appeal. On appeal, Dorrough complains the trial court erred when it denied his motion for reconsideration based on common-law official immunity.

### SUBJECT-MATTER JURISDICTION

As a threshold question, we must determine whether Dorrough successfully invoked this court's subject-matter jurisdiction. *See City of Hous. v. Estate of Jones*, 388 S.W.3d 663, 667 (Tex. 2012) (per curiam) (addressing timeliness of notice of appeal following denial of amended motion); *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction."). The trial court denied Dorrough's motion to dismiss on February 22, 2013, but his notice of appeal was not filed until December 12, 2013. Because his notice of appeal appeared to be untimely, we ordered Dorrough to show cause why his appeal should not be dismissed for want of jurisdiction. *See* TEX. R. APP. P. 25.1(b) (jurisdiction of appellate court); *Estate of Jones*, 388 S.W.3d at 667.

### A.     Meeting Elements for Interlocutory Appeal

In his timely response to our order, Dorrough asserted he was entitled to an interlocutory appeal under section 51.014(a)(5). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) (West Supp. 2013). The section authorizes a person to pursue an interlocutory appeal if a trial court denies that person's "motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state." *Id.* Although the statute's plain language

refers to a "motion for summary judgment," its provision is not limited to a specific type of procedural vehicle. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) ("If the trial court denies the governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise, the Legislature has provided that an interlocutory appeal may be brought.").

Dorrough's motion for reconsideration asserted for the first time common-law official immunity as a state official. In determining whether the trial court's denial of Dorrough's motion authorizes an interlocutory appeal, we look to the motion's contents rather than its title. *See Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex. 2011) (per curiam) ("[A]n appeal may be taken from orders denying an assertion of immunity, as provided in section 51.014(a)(5), regardless of the procedural vehicle used."). Dorrough's motion raised official immunity, and the trial court denied his motion. Dorrough met the requirements for an interlocutory appeal under section 51.014(a)(5). *See id.*

## B.     Timeliness of Notice of Appeal

The trial court denied Dorrough's motion for reconsideration on November 24, 2013; his notice of appeal was due on December 16, 2013. *See* TEX. R. APP. P. 26.1(b). He filed his notice of appeal four days before the due date, which made it timely. *See id.* Given a timely notice of appeal filed on a statutorily authorized basis for interlocutory appeal, we have subject-matter jurisdiction for this appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5); TEX. R. APP. P. 25.1(b); *Estate of Jones*, 388 S.W.3d at 667. We turn to the substantive issue of official immunity for a deputy game warden.

### OFFICIAL IMMUNITY FOR DEPUTY GAME WARDEN

Although Dorrough initially sought immunity from suit under the Texas Tort Claims Act, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f), he now concedes he does not meet the Act's

"government employee" definition, *see id.* § 101.001(2) (defining an employee as one "who is in the paid service of a governmental unit"). Instead, he relies on common-law official immunity to bar the Faircloths' suit. *See Filarsky*, 132 S. Ct. at 1661–62. We first consider whether common-law official immunity extends to a deputy game warden.

## A.    Common-Law Official Immunity

Official immunity is a common-law doctrine that protects government officials from liability and suit. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 422, 424 (Tex. 2004) (immunity from suit); *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002) (immunity from liability). "Texas courts have long recognized official immunity, in substance if not by name, for a variety of public officials." *Ballantyne*, 144 S.W.3d at 423.

### 1.    Purpose of Official Immunity

"Common law official immunity is based on the necessity of public officials to act in the public interest with confidence and without the hesitation that could arise from having their judgment continually questioned by extended litigation." *Id.* at 424; *accord Filarsky*, 132 S. Ct. at 1661–62. If official immunity were not available, "candidates would be deterred from entering public service if heavy burdens on their private resources from monetary liability were a likely prospect for errors in judgment." *Ballantyne*, 144 S.W.3d at 424; *accord Filarsky*, 132 S. Ct. at 1665. Despite public officials' fallibility in exercising discretion and judgment, "[d]enying the affirmative defense of official immunity to public officials in such circumstances 'would contribute not to principled and fearless decision-making but to intimidation.'" *Ballantyne*, 144 S.W.3d at 424.

### 2.    Courts Define Official Immunity

Because official immunity is a common-law doctrine, courts determine its scope and applicability. *See Reata Const. Corp. v. City of Dall.*, 197 S.W.3d 371, 375 (Tex. 2006) ("[I]t

remains the judiciary's responsibility to define the boundaries of the common-law doctrine and to determine under what circumstances sovereign immunity exists in the first instance."); *accord City of Leon Valley Econ. Dev. Corp. v. Little*, 422 S.W.3d 37, 42 (Tex. App.—San Antonio 2013, no pet.). In a number of cases, the Texas Supreme Court and intermediate appellate courts have decided whether official immunity extends to certain public officials. *E.g.*, *Ballantyne*, 144 S.W.3d at 424; *Medina Cnty. Comm'rs Court v. Integrity Grp., Inc.*, 944 S.W.2d 6, 8–10 (Tex. App.—San Antonio 1996, no writ).

*3.      Standard of Review*

Whether the doctrine of official immunity may extend to a deputy game warden is a question of law which we review de novo. *See City of Hous. v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011).

**B.      Does Official Immunity Extend to a Deputy Game Warden?**

In this case of first impression, we must decide whether a deputy game warden may invoke official immunity. We note that other courts have extended official immunity to a variety of public officials carrying out discretionary official duties, such as the following:

- An employment lawyer, *Filarsky*, 132 S. Ct. at 1660, 1667;
- A city's Board of Adjustment members, *Ballantyne*, 144 S.W.3d at 424;
- A city's public school board trustees, *Campbell v. Jones*, 264 S.W.2d 425 (Tex. 1954);
- Police officers, *Telthorster*, 92 S.W.3d at 459–60;
- Government-employed medical personnel performing governmental (non-medical) functions, *Kassen v. Hatley*, 887 S.W.2d 4, 11 (Tex. 1994);
- County commissioners, *Medina Cnty. Comm'rs Court*, 944 S.W.2d at 8–10; and
- Volunteer firefighters, *Green v. Alford*, 274 S.W.3d 5, 14 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc).

The two cases that are most relevant here are *Green* and *Filarsky*.

*1.*      Green v. Alford

In *Green*, the en banc court applied official immunity to a "volunteer firefighter for the Pasadena Volunteer Fire Department." *Green*, 274 S.W.3d at 9. The opinion does not expressly state that Green was not paid for his service as a firefighter. However, it identified him as a volunteer firefighter in a volunteer fire department, and relying on the ordinary meaning of volunteer, we may conclude Green was an unpaid worker. *See id.* Without discussing whether Green was paid, the court decided Green was a governmental employee performing discretionary duties within the scope of his authority, and examined only the good faith element of his affirmative defense of official immunity. *Id.*

*2.*      Filarsky v. Delia

In *Filarsky*, a case decided after *Green*, the Supreme Court addressed official immunity and who qualifies for its protections. *Filarsky*, 132 S. Ct. at 1663–66. In addition to reciting the benefits of official immunity for public officials, *id.* at 1665–66 (e.g., "avoiding 'unwarranted timidity'"), *Filarsky* addressed how the common law historically "extended certain protections to individuals engaged in law enforcement activities," *id.* at 1664. It noted that a private individual called to serve in a posse comitatus "is entitled to the same protection in the discharge of his duties as the sheriff himself." *Id.* It also observed that a "special constable, duly appointed according to law . . . [was] as fully protected as any other office." *Id.* (second alteration in original).

*3.*      *Extending Official Immunity to a Deputy Game Warden*

In Texas, the legislature has authorized the commissioning and service of deputy game wardens. TEX. PARKS & WILD. CODE ANN. § 11.020 (West 2002). The statute generally describes the official duties they are authorized to perform, creates performance standards, identifies some of the purposes they accomplish on behalf of the State, and directs the commission to create regulations governing them. *Id.* The statute also states that deputy game wardens "serve without

compensation from the state." *Id.* Given *Green*'s precedent that a volunteer firefighter is a government employee for purposes of invoking official immunity, *Green*, 274 S.W.3d at 9, the statutory authorization for deputy game wardens, TEX. PARKS & WILD. CODE ANN. § 11.020, and *Filarsky*'s recitation of the benefits of extending official immunity to public officials, *Filarsky*, 132 S. Ct. at 1665–66, we hold that the common-law doctrine of official immunity extends to deputy game wardens. We turn now to whether Dorrough successfully invoked official immunity.

## OFFICIAL IMMUNITY FOR DORROUGH

Dorrough did not originally invoke common-law official immunity; instead, he initially moved for summary judgment based on no evidence, and the trial court denied his motion.

### A.    Nature of Motion for Reconsideration

In his motion for reconsideration, Dorrough raised common-law official immunity, and re-urged his no evidence motion. But a defendant "should not move for no-evidence summary judgment based on an affirmative defense that it has the burden to prove at trial." *Thomas v. Omar Invs., Inc.*, 129 S.W.3d 290, 293 (Tex. App.—Dallas 2004, no pet.); *accord Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Because common-law official immunity is an affirmative defense, and Dorrough has the burden to prove each of its elements, *Ballantyne*, 144 S.W.3d at 423; *Telthorster*, 92 S.W.3d at 460–61, a no evidence motion was inapt, *see Thomas*, 129 S.W.3d at 293; *Nowak*, 110 S.W.3d at 680. Therefore, "[w]e look to the substance of [his] plea for relief to determine [its] nature." *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980); *see Crown Life Ins. Co. v. Estate of Gonzalez,* 820 S.W.2d 121, 121 (Tex. 1991) ("[D]ecisions of the courts of appeals [should] turn on substance rather than procedural technicality.").

Although Dorrough several times referred to his "no evidence motion," Dorrough also moved the trial court to "grant summary judgment in his behalf on the basis of immunity [under

section 101.106(f)] when considered together with *Filarsky v. Delia*," he attached evidence supporting his motion, and he submitted additional evidence in his motion for leave to file a response to the Faircloths' amended motion. Thus, we construe his plea for relief as a traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c) (authorizing traditional summary judgment based on the motion's grounds and evidence submitted with the motion); *Heard*, 603 S.W.2d at 833. We turn to the applicable law and standard of review.

**B.      Elements of Official Immunity**

Official immunity, sometimes called qualified immunity, is an affirmative defense. *Ballantyne*, 144 S.W.3d at 423; *Kassen*, 887 S.W.2d at 8; *Chambers*, 883 S.W.2d at 653; *see City of Houston v. Kilburn*, 849 S.W.2d 810, 812 n.1 (Tex. 1993) (noting that qualified immunity and official immunity are terms that are often used interchangeably). The elements of official immunity are well-established: public officials must be "(1) acting within the scope of their authority (2) in performing their discretionary duties in (3) good faith." *Ballantyne*, 144 S.W.3d at 422; *accord Telthorster*, 92 S.W.3d at 461.

**C.      Standard of Review**

When a defendant moves for traditional summary judgment on the affirmative defense of official immunity, he must conclusively prove each element of his defense. *Ballantyne*, 144 S.W.3d at 424; *Telthorster*, 92 S.W.3d at 461; *Chambers*, 883 S.W.2d at 653. If the defendant movant meets this burden, and the nonmovant's summary judgment evidence fails to raise a genuine issue of material fact on any essential element, the movant is entitled to judgment. TEX. R. CIV. P. 166a(c); *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985).

To establish the element of good faith, a public official must conclusively prove that "a reasonably prudent official, under the same or similar circumstances, could have believed that his

conduct was justified based on the information he possessed when the conduct occurred." *Ballantyne*, 144 S.W.3d at 426; *accord Telthorster*, 92 S.W.3d at 465; *Chambers*, 883 S.W.2d at 656. The test for good faith turns not on "'what a reasonable person *would have done*,'" but rather on "'what a reasonable [person] *could have believed*.'" *Ballantyne*, 144 S.W.3d at 426 (quoting *Telthorster*, 92 S.W.2d at 465). The official "must prove only that a reasonably prudent [official], under similar circumstances, *might* have [acted the same way]." *Telthorster*, 92 S.W.2d at 465; *accord Chambers*, 883 S.W.2d at 656. If the official meets this burden, the nonmovant "must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *Chambers*, 883 S.W.2d at 657; *accord Telthorster*, 92 S.W.2d at 465.

We review the summary judgment evidence to determine whether Dorrough met his burden, and then whether the Faircloths met theirs.

D.     **Summary Judgment Evidence**

In the July 12, 2013 hearing on Dorrough's motion to reconsider the trial court's earlier denial of his motion for summary judgment, Dorrough complained that the Faircloths had submitted a response after 5:00 p.m. the previous day. Dorrough asked the court not to rule on his motion until he had time to read and respond to the Faircloths' amended petition. The trial court granted Dorrough's oral motion, and gave him permission to file a written supplement to his motion for reconsideration. The court also gave the Faircloths permission to respond to any supplement Dorrough submitted. The court expressly agreed it would consider the supplement and response before it decided Dorrough's motion for reconsideration. As part of his supplement, Dorrough submitted an affidavit, with exhibits, from Lieutenant Colonel Danny Shaw, a deputy director of law enforcement for the Texas Parks and Wildlife Department. The record does not show that the Faircloths objected to Shaw's affidavit or exhibits. We consider Shaw's affidavit,

exhibits, and the other summary judgment evidence as it pertains to each element of official immunity.

**E.     Scope of Authority**

The first element of official immunity we consider is whether Dorrough was acting within the scope of his authority.

*1.     Applicable Law*

"[P]ublic officials act within the scope of their authority if they are discharging the duties generally assigned to them." *Ballantyne*, 144 S.W.3d at 424; *accord Chambers*, 883 S.W.2d at 658. The Parks and Wildlife Code expressly authorizes "[a] commissioned deputy game warden [to] enforce state laws relating to hunting and fishing" in a prescribed geographical area. TEX. PARKS & WILD. CODE ANN. § 11.020; *see also* 31 TEX. ADMIN. CODE § 55.62 (2013) (Tex. Parks & Wildlife Dep't, Deputy Game Wardens) ("A deputy game warden is authorized . . . to perform such game and fish duties as may be assigned by the regular game warden, in geographical areas designated by the Department.").

*2.     Shaw's Affidavit, Exhibits*

In Shaw's affidavit, he stated he reviewed the relevant Department records; he concluded that Dorrough met all the commissioning requirements and was a properly commissioned deputy game warden on the date of the incident. He provided a geographical assignment log that showed Dorrough was assigned to the "Bandera/San Antonio" geographical area, and the Faircloths' property is within that area. He stated that Dorrough was authorized to investigate a complaint alleging a violation of the Parks and Wildlife Code. *See* TEX. PARKS & WILD. CODE ANN. § 62.0125 (prohibiting any person from "intentionally interfer[ing] with another person lawfully engaged in the process of hunting or catching wildlife" and defining that process to include "other acts preparatory to hunting or catching of wildlife that occur on land or water on which the affected

person has the right or privilege of hunting or catching that wildlife"). Shaw concluded that Dorrough was acting within his official capacity as a deputy game warden when he questioned the Faircloths.

### 3. Faircloths' Affidavits

The Faircloths assert Dorrough was not acting within the scope of his authority because he acted improperly in confronting them, he misidentified himself as a game warden, and he should not have asked them for their property deed. They insist these alleged errors show Dorrough was acting outside the scope of his authority.

### 4. Dorrough Acted Within Scope of Authority

Taking the Faircloths' affidavits as true, we nevertheless conclude they failed to raise a genuine issue of material fact on the element of scope of authority. Even if some aspects of Dorrough's investigation were "later determined to be incorrect," such alleged errors do not put Dorrough's investigation of Coolidge's complaint outside the scope of his authority. *See Ballantyne*, 144 S.W.3d at 425; *Chambers*, 883 S.W.2d at 658. The controlling question for the scope of authority is not whether Dorrough made errors in his investigation; rather, it is whether he was discharging the duties generally assigned to him. *See Ballantyne*, 144 S.W.3d at 424; *Chambers*, 883 S.W.2d at 658.

The relevant sections of the Parks and Wildlife Code conclusively establish that investigating allegations of violations of the Parks and Wildlife Code is within the authority of a deputy game warden. *Cf. Ballantyne*, 144 S.W.3d at 425. Further, Shaw's affidavit and the attached exhibits, to which the Faircloths did not object, conclusively establish that Dorrough was properly commissioned and investigating within his assigned geographical area. Thus, Dorrough met his burden to conclusively prove he was acting within the scope of his authority when he

investigated Coolidge's complaint, and the Faircloths' evidence fails to raise a genuine issue of material fact on this element.

We turn to the next element—whether Dorrough was performing a discretionary function.

### F.      Mandatory or Discretionary Function

Citing the Parks and Wildlife Code, Dorrough avers he was performing a discretionary function when he investigated Coolidge's complaint and questioned the Faircloths. *See* TEX. PARKS & WILD. CODE ANN. § 11.020 (deputy game wardens). The Faircloths do not assert that a deputy game warden's investigation is a mandatory function rather than a discretionary one. We consider the applicable law distinguishing mandatory and discretionary functions, and whether a deputy game warden's investigation is a discretionary function.

#### 1.      *Distinguishing Mandatory and Discretionary Functions*

As opposed to a mandatory function, "[i]f an action involves personal deliberation, decision, and judgment, . . . it is discretionary." *Ballantyne*, 144 S.W.3d at 425; *accord Chambers*, 883 S.W.2d at 655. Although a deputy game warden's duties do not comprise all the duties of a peace officer, the deputy's law enforcement duties invite comparisons to police officer case precedents. *See* TEX. PARKS & WILD. CODE ANN. § 11.020(c) (authorizing a deputy game warden to "enforce state laws relating to hunting and fishing"). In analyzing a police officer case, *Chambers* opined that "[t]he decision to pursue a particular suspect will fundamentally involve the officer's discretion, because the officer must, in the first instance, elect whether to undertake pursuit." *Chambers*, 883 S.W.2d at 655. We are persuaded that such logic applies here.

#### 2.      *Is a Deputy Game Warden's Investigation a Discretionary Function?*

A deputy game warden is authorized to investigate complaints of violations of the Parks and Wildlife Code, but there is no requirement that the deputy investigate every complaint. *See* TEX. PARKS & WILD. CODE ANN. § 11.020 ("A commissioned deputy game warden *may* enforce

state laws relating to hunting and fishing . . . ." (emphasis added)). Thus, by deciding whether to investigate a particular complaint, the deputy game warden exercises discretion. *Cf. Chambers*, 883 S.W.2d at 655. Therefore, we hold that a deputy game warden performs a discretionary function when the deputy investigates a complaint. *Cf. id.* We conclude Dorrough conclusively proved he was performing a discretionary function, and the Faircloths failed to raise a genuine issue of material fact on this element. We turn to the final element: good faith.

**G.      Good Faith**

The parties vigorously dispute whether Dorrough acted in good faith when he questioned the Faircloths. To establish good faith, Dorrough must conclusively prove that a reasonably prudent deputy game warden faced with similar circumstances could have acted as he did. *See Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465; *Chambers*, 883 S.W.2d at 656. If Dorrough meets this burden, the Faircloths must then "show that 'no reasonable person in [Dorrough's] position could have thought the facts were such that they justified [his] acts.'" *Chambers*, 883 S.W.2d at 657; *accord Telthorster*, 92 S.W.2d at 465. We consider the summary judgment evidence.

*1.      Shaw's Affidavit*

a.      <u>Audio Recording</u>

In his affidavit, Shaw averred that he listened to the Faircloths' audio recording of the verbal confrontation. He noted the recording lasted about two minutes and twenty-seven seconds. In the recording, he heard a verbal confrontation between John Faircloth and Dorrough. At the beginning of the conversation, Dorrough was "speaking in a calm voice." More than once, Dorrough identified himself as a game warden and asked for John Faircloth's identification. Four times Shaw heard a female voice tell John Faircloth to calm down. Shaw also noted that John Faircloth cut off "Dorrough in all attempts to converse with him about the initial complaint."

### b. Additional Information

In his affidavit, Shaw also included excerpts from Dorrough's written statement. Dorrough stated he felt threatened by John Faircloth's running at him, swinging his arms, and screaming in his face. Dorrough admitted he yelled at John Faircloth, but only in response to John Faircloth's provocative speech and actions.

### c. Shaw's Conclusion

After briefly describing his almost thirty-years' experience working for the Texas Parks and Wildlife Department, beginning as a game warden and advancing to deputy director of law enforcement, Shaw reviewed the applicable statutes and regulations governing deputy game wardens. Shaw stated he had reviewed the circumstances of this matter, and concluded that Dorrough erred when he misidentified himself as a game warden. Nevertheless, Shaw concluded that when Dorrough investigated Coolidge's complaint and questioned the Faircloths, he was "acting in an official capacity as a deputy game warden and his actions were reasonable."

### d. Dorrough Met His Burden

Given Shaw's affidavit and exhibits, to which the Faircloths did not object, we conclude that Dorrough met his summary judgment burden to establish that a reasonable deputy game warden could have acted as he did under similar circumstances. *See Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465. Because Dorrough met his burden, the evidentiary burden shifted to the Faircloths. *See Telthorster*, 92 S.W.3d at 466–67; *Chambers*, 833 S.W.2d at 657.

### 2. *Faircloths' Affidavits*

To raise a genuine issue of material fact on good faith, the Faircloths had to show that no reasonable deputy game warden could have acted as Dorrough did. *See Ballantyne*, 144 S.W.3d at 426; *Telthorster*, 92 S.W.3d at 465. In their affidavits, the Faircloths averred the following regarding Dorrough's conduct on the day in question:

- his breath smelled of alcohol,
- he entered their property without their permission;
- he peered through their windows;
- he yelled obscenities at John Faircloth and threatened to strike him;
- he repeatedly demanded to see their deed;
- he threatened John Faircloth with arrest if he told any more people to leave the lake bed area; and
- he acted out of animus for the Faircloths.

Because good faith is a test of objective legal reasonableness, Dorrough's subjective intent is irrelevant, and we do not address it. *See Ballantyne*, 144 S.W.3d at 427–28. Nevertheless, we address the remaining alleged facts.

The Faircloths do not allege Dorrough was intoxicated or incapacitated, nor do they provide any evidence of such impairment; they merely state that his breath smelled of alcohol. They aver that Dorrough peered, yelled, demanded, and threatened, and they imply that these actions show bad faith per se.

Taking the Faircloths' affidavits as true, they are nevertheless no evidence that no reasonable deputy game warden could have acted as Dorrough did. Their assertions merely provide the basis for their lay opinions about Dorrough's actions. *Cf. Medina County Comm'rs Court v. Integrity Group, Inc.*, 944 S.W.2d 6, 10 (Tex. App.—San Antonio 1996, no writ) (deciding that plaintiff's affidavits failed to meet its burden to controvert defendants' good faith).

The Faircloths failed to provide any statute or regulation showing that Dorrough was prohibited from acting as he did. Further, they provided no affidavit from any authority familiar with deputy game warden duties, procedures, and conduct that no reasonable deputy game warden could have acted as Dorrough did given the applicable law and the facts he had at the time. *See Telthorster*, 92 S.W.2d at 465; *Chambers*, 883 S.W.2d at 657. *See generally Telthorster*, 92

S.W.3d at 464 (opining on the "volatile and changing circumstances" those conducting "street-level police work" sometimes encounter).

While the Faircloths may have raised questions of whether another reasonably prudent deputy game warden would have acted as Dorrough did, the Faircloths failed to meet their burden to show *no* reasonable deputy game warden could have acted as Dorrough did given the applicable law, John Faircloth's conduct, and the other circumstances present here. *See City of San Antonio v. Ytuarte*, 229 S.W.3d 318, 321 (Tex. 2007) (explaining that the applicable test "is one of 'objective legal reasonableness' and the immunity protects 'all but the plainly incompetent or those who knowingly violate the law'" (quoting *Chambers*, 883 S.W.2d at 656)); *Telthorster*, 92 S.W.3d at 465, 467; *Chambers*, 883 S.W.2d at 657.

## CONCLUSION

As we previously determined, we have subject-matter jurisdiction in this interlocutory appeal to decide whether the trial court erred when it denied Appellant Kenneth Mark Dorrough's motion for reconsideration—which we construe as a traditional motion for summary judgment.

We hold that the common-law doctrine of official immunity extends to a deputy game warden.

To invoke immunity from suit, Dorrough had to conclusively prove the elements of his affirmative defense of official immunity. Having reviewed the summary judgment evidence, we conclude Dorrough met his summary judgment burden to prove he acted within the scope of his authority while performing a discretionary act. For the element of good faith, we conclude Dorrough met his burden to prove that a reasonable deputy game warden could have acted as he did, and the Faircloths failed to meet their burden to prove that *no* reasonable deputy game warden could have acted as Dorrough did. Thus, Dorrough is immune from suit, and the trial court lacked

subject-matter jurisdiction.  *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

Therefore, we reverse the trial court's order, vacate the temporary injunction, and dismiss the Faircloths' suit with prejudice.

Patricia O. Alvarez, Justice